MAURICE ELWOOD AND WINNIFRED HIS WIFE vs.
PETER LANNON's Lessee.

*Ejectment—Law of Descents—Estoppel—Admissions as
Evidence.*

A plaintiff in ejectment must recover by the strength of his own title and
not by the weakness of that of his adversary; it is also essential to
enable him to maintain an action of ejectment and to recover the estate,
that he should be clothed with the legal title and the right of possession
at the time the action is instituted.

A. died seized in fee of certain premises, leaving a daughter, his only
child and heir-at-law, who died intestate and without issue. B., a
brother of A., instituted an action of ejectment to recover the estate.
HELD:

That under the law regulating descents, the estate went to the grand-
father (if living) of the deceased daughter of A., and until his right was
extinguished, or his death proved, B. could not maintain his action; and
the *onus probandi* was upon him to satisfy the jury that the grandfather
was dead.

In an action of ejectment, where plaintiff and defendant claim title under
A., it is only necessary for the plaintiff to prove his derivation of title
from A.; he need not produce evidence of A.'s title, as the defendant is
precluded from impeaching the title under which he is in possession.

The law of descents gives the real estate of a child dying intestate without
descendants, to the father, if the same descended from the father; if no
father living, then to the brothers and sisters of the intestate of the
blood of the father, and their descendants equally; if no brother or
sister, or descendant from such brother or sister, then to the grandfather
on the part of the father; if no such grandfather living, then to the
descendants of such grandfather and their descendants, in equal degree
equally.

Under the law of descents in this State there is no representation among
collaterals after brothers' and sisters' children. An uncle of an intes-
tate without issue, is entitled to the whole real estate, to the exclusion
of the children of a deceased uncle.

A party is estopped from denying the title and possession of one under
whom he claims.

Parties are bound by their written admissions made in the progress of a
cause, and such admissions are proper and competent evidence on a
second trial.

APPEAL from the Circuit Court for Allegany County.

This was an action of *ejectment* brought by the appellee against the appellants to recover four lots in the town of Llangollan, in Allegany county, described as lots 34, 41, 42 and 43. Plea not guilty. From the view taken of the case by this Court, no statement of facts additional to those which appear in the opinion is deemed necessary.

*Exception:* The appellee (plaintiff below) offered two prayers, the first was rejected; the second was granted, to wit:

If the jury believe from the evidence in the cause that William Lannon died in possession of the lots claimed in the declaration in this case; that at his death he left surviving him his widow, the said Winnifred, now Winnifred Elwood, one of the defendants, and an only child, his daughter, the said Mary Lannon; that since the death of the said William Lannon the said Winnifred, his widow, intermarried with the said Maurice Elwood; that the said Mary Lannon, daughter of the said William, departed this life intestate and without issue before the first day of December, 1864; that the said William Lannon at his death left also surviving him only two brothers, Peter Lannon, the plaintiff, and John Lannon, the witness; that John Lannon sold his interest in the said lots to the said Peter, as evidenced by his deed to the said Peter offered in evidence; that the said William Lannon left surviving him no child or children except the said Mary Lannon, nor the issue of any child, and no sister surviving him; and that the lots mentioned in the declaration are upon and form part of lot No. 1 mentioned in the copy of the patent offered in evidence by the plaintiff; that then the said patent, chancery papers and deeds offered in evidence, in connection with the curing Act of the General Assembly of Maryland, also offered in evidence, are sufficient in law to show title in the said William Lannon, and the plaintiff is entitled to recover the

lots mentioned in the declaration. The defendants asked the following instruction :

1st. That the petition and affidavit offered in evidence subject to exceptions, is not evidence for the purpose for which it was offered, and the defendants are not thereby estopped from denying the right of the plaintiff to recover in this cause on the pleadings and evidence in the cause.

2d. That there is not sufficient evidence in this cause to prove title in the lessor of the plaintiff, and therefore the plaintiff cannot recover under the pleadings and evidence in the cause.

3d. If the jury shall find the facts stated in the recitals of the copy of the patent offered in evidence by the plaintiff, then they may presume that a patent was issued by the State of Maryland for said land to Charles Queen, prior to the issuing of the patent to John Miller, a copy of which is now offered in evidence ; and if they do so find them, the plaintiff cannot sustain this action under any title derived by said patent to John Miller.

4th. If the jury shall find from the evidence in the cause that the plaintiff's lessors and those under whom he claims did not hold adverse, continuous and uninterrupted possession with claim of title for twenty years prior to the commencement of this suit, then any possession they may find in said lessor or those under whom he claims will not be sufficient to prove title in the lessor of the plaintiff.

5th. If the jury shall find from the evidence in the cause that William Lannon died seized of the lots in controversy, leaving a daughter, Mary Lannon, surviving him ; that said Mary died after the 1st of December, 1863, and that said William had a brother named Michael, who died leaving children, and that said children are still living, then the plaintiff cannot recover on the pleadings and evidence in this cause.

The Court (PEARRE, J.,) rejected the first, second, third

and fifth prayers of the defendants, and granted the fourth. To the ruling of the Court in granting the prayer of the plaintiff, and in rejecting the first, second, third and fifth prayers of the defendants, they excepted, and the verdict and judgment being against them, appealed. Other exceptions which were taken have been omitted, inasmuch as they were not considered by this Court.

The cause was argued before BOWIE, C. J., BARTOL, WEISEL and CRAIN, J.

*J. H. Gordon*, for the appellants.

The prayer of the appellee is defective for the following reasons:

1st. It assumes that Peter Lannon, the uncle, took the lands in controversy by descent from his niece, Mary Lannon, although she died without issue.

2d. It also assumes that the lands in controversy passed immediately from the niece, Mary Lannon, to the uncle, Peter Lannon, when, by law, they went to the grandfather. If William Lannon died seized in fee of those lands, they descended, upon his death, to his daughter Mary, and upon her death without issue, and no brothers or sisters, or issue of brothers or sisters, they went to the grandfather, and the title is therefore in the grandfather, and not in the uncle. *Code of Pub. Gen. Laws, p.* 330.

3d. The last paragraph instructs the jury that the patent, chancery papers and deeds, offered in evidence in connexion with the Act of Assembly, are sufficient in law to show title in William Lannon, which is erroneous, for the reason that there is no evidence to show that Governear had title to lot No. 41, and there is no other title paper for that lot to William Lannon.

The defendant's first prayer ought to have been

granted, because the petition and affidavit, presented for the purpose of enabling them to appear by a special consent rule, do not estop them from showing an outstanding title, or from putting the plaintiff on proof of title. *Phil. on Evidence,* 440, and cases there cited.

The defendant's second prayer should have been granted, because the lands in controversy, as claimed by the plaintiff, descended from William Lannon to his daughter Mary, and upon her death without issue, and without brother or sister, or brother's or sister's children living, they descended to the grandfather of Mary, who took in preference to William, the uncle. *Code of Pub. Gen. Laws,* p. 330.

Should it be contended that the grandfather was dead, there is no evidence to prove it, and the *onus* is upon the plaintiff, who must prove every fact necessary to make his title complete. *Peterkin's Lessee vs. Inloes et al.,* 4 *Md. Rep.,* 186 ; *Hammond's Lessee vs. Inloes et al.,* 4 *Md. Rep.,* 138 ; 1 *Phil. Ev.,* 340.

*Thomas J. McKaig, Jr.,* and *Thomas J. McKaig,* for the appellee :

The defendants' first prayer was properly rejected, because the petition of Maurice Elwood and Winnifred his wife, stating the seizure in fee simple of William Lannon, at the time of his death, of the premises in controversy, was a solemn admission *in judicio,* made in the course of this judicial proceeding, and, as such, constituted an estoppel relative to the denial upon the part of the defendants, of the title of William Lannon. 1 *Green. on Ev.,* sec. 27.

This admission was made for the purpose of alleviating the stringency of the rule of practice, requiring the defendants to confess lease, entry and ouster, and was therefore conclusive against them in the trial of this cause. 1 *Green. on Ev.,* sec. 186 ; *Doe, d. Wetherell vs.*

*Bird*, 7 *Carr. & Payne*, 6 (32 *Eng. C. L. Rep.*, 417;) *Langley vs. The Earl of Oxford*, 1 *Mees. & Welsby*, 508; *Marshall vs. Cliff.*, 4 *Camp.*, 133.

The defendants' third prayer is defective, and there was no error in its rejection, because in this action the defendants cannot deny the title of William Lannon, under whom both parties claim. 2 *Green. on Ev., sec.* 307; *Jackson vs. Hinman*, 10 *Johns.*, 292; *Adams on Ejectment*, 276 (*marginal paging.*)

Besides this, the defendants are estopped from denying his title by their petition filed in this case, admitting the fee simple in William Lannon at the time of his death.

The Court below ruled correctly in rejecting the defendants' fifth prayer, simply because the Act of 1820, chapter 191, section 4, declares that there shall be no representation among collaterals, after brothers' and sisters' children; and therefore the children of Michael Lannon, an uncle of the intestate, Mary Lannon, possessed no inheritable interest whatsoever in the estate of said Mary Lannon. *Porter vs. Askew*, 11 *G. & J.*, 346; *Levering vs. Levering*, 3 *Md. Ch. Dec.*, 365; *Levering vs. Heighe*, 2 *Md. Ch. Dec.*, 81; *Ellicott vs. Ellicott*, 2 *Md. Ch. Dec.*, 468.

The last paragraph of the second prayer of the plaintiff, instructing the jury that the patent, chancery papers and deeds offered in evidence, in connection with the Act of Assembly, were sufficient in law to show title in•William Lannon, was clearly not erroneous, simply because by the agreement of counsel it was specified and admitted " that said proceedings were regular." The objection that this prayer " assumes that the lands in controversy passed to the uncle, Peter Lannon, when by law they went to the grandfather ;" even if tenable, cannot now avail in this Court, for the reason that it is here sprung for the first time ; no intimation whatever of it having been given in the Court below. Peter and John Lannon, old and grey-

haired men, the sons of this deceased grandfather, were before the jury as witnesses in the trial of the cause; and in the argument upon the prayers and before the jury no question was made as to the existence of the grandfather, or want of proof as to his death. To allow this objection now to prevail would be to constitute an unjustifiable surprise upon the appellee, totally unwarranted by the plainest dictates of justice.

In *Boarman vs. Israel and Patterson, Exs.*, 1 *Gill*, 372, it is decided that this Court will not reverse a judgment of the Circuit Court for an error, which does not appear to have been presented to the consideration of the Circuit Court, and in relation to which no decision appears to have been made. It was solely to prevent hardships of this character that the Act of 1862, chapter 154, was passed, and that law is therefore conclusive on the point.

CRAIN, J., delivered the opinion of this Court.

The plaintiff's lessee instituted an action of ejectment in Allegany county to recover the several parcels of land named in his declaration. The defendants were served with the notice of the writ, appeared to the suit and pleaded not guilty to the declaration. It appears from the evidence in the record that William Lannon was the owner in fee of the real estate in controversy, and died in possession of the same in 1858, leaving a widow, Winnifred, one of the appellants, and an infant daughter, called Mary, his only heir-at-law, who died in February, 1863, intestate, and unmarried. Her father, William Lannon, had three brothers, Michael, Peter and John. Michael died before William, leaving several children, who are living. Peter and John survived their brother William, and were living at the death of Mary Lannon. Peter and John Lannon on the death of Mary, their niece, claimed all the estate in controversy as her heirs-at-law and next of kin. John Lannon sold all his interest in the land to

his brother Peter, who instituted this action to recover the same. After the writ was served on the defendants they appeared to defend the suit and filed a petition, verified by an affidavit, in which they set forth that they were the tenants in *possession* of the *real estate* in *controversy;* "that Winnifred Elwood was the wife of one William Lannon, and that said William Lannon died seized in his demesne, as of fee in the premises, and left Mary Lannon, an infant daughter, and his only heir-at-law to said premises; that said Winnifred was appointed guardian to said Mary by the Orphan's Court of Allegany county, and as such guardian, and in her own right as widow of said William, she remained in possession of the premises during the life of said Mary, who died in February, 1863, and since that time said Winnifred has continued in possession of said premises, claiming her dower interest in the same, and also as heir to her said daughter, Mary Lannon; and that the defendant, Maurice Elwood, has intermarried with the said Winnifred, and is in possession by virtue of her rights."

By this admission filed in the cause the defendants distinctly declare that they claim and hold this real estate in virtue of Winnifred's dower right in the property, as the widow of William Lannon, and as the heir to her daughter, Mary Lannon. They set up no other claim. Peter Lannon, in his own right and as grantee of his brother John, claims the same property as next of kin to Mary Lannon. Both parties claim under the same person, and it is *prima facie* sufficient to prove the derivation of title from Mary Lannon without producing any patents or deeds to prove the title of William Lannon and his daughter Mary. We consider the admission of a most conclusive character, for it admits the fee simple was in William Lannon and descended to his daughter Mary, who died in 1863. By it they were estopped from claiming the property under any other title. It must also be

regarded as an admission made in the course of judicial proceedings for the purpose of showing that the defendants were in possession of the property by virtue of the defendant Winnifred being the widow of William Lannon and the mother of Mary Lannon, and it would be contrary to good faith to permit a party to controvert the title of him, by whom he has obtained possession. *Adams on Ejectment*, 267. As both parties claim under William Lannon, there can be no controversy about his title, and the only question for us to determine is, has the plaintiff, by the evidence in the record, shown such a title as to enable him to recover in this action? Courts of law are controlled by well known principles applicable to ejectment suits, and which are never disregarded. A plaintiff in ejectment must recover by the strength of his own title, and not by the weakness of the title of his adversary; and it is also essential to enable him to maintain an action of ejectment and to recover the real estate, that he should be clothed with the legal title and the right of possession at the time the action was instituted; the weakness of the title of the defendants cannot operate to vest a right and title to the property in him.

In this action he must show affirmatively that he is entitled to recover the property, as heir-at-law and next of kin to Mary Lannon. There is no evidence in the record of the death of the father of William Lannon, and in the absence of such evidence we cannot assume his death on the ground of legal presumptions. By the law of descents the real estate goes to the grandfather of Mary Lannon, and until his right was extinguished, or his death proved, the uncles of Mary could not maintain their action. The law of descents gives the real estate of a child, dying without descendants, to the father, if the real estate descended from the father; "if no father living, then to the brothers and sisters of the intestate of the blood of the father and their descendants equally. If no brother or

sister, or descendant from such brother or sister, then to the grandfather on the part of the father. If no such grandfather living, then to the descendants of such grandfather and their descendants in equal degree equally." *Code of Pub. Gen. Laws, Art.* 47, *secs.* 4, 5, 6. These are the rules of descent prescribed by the Code, and the appellee must show the descent of himself and the person last seized from some common ancestor, together with the extinction of the rights of all those who were entitled to claim before him. If the grandfather be alive he has the right to the real estate, to the exclusion of Mary Lannon's uncles. Such being the law, the *onus probandi* was on the appellee to produce evidence to satisfy the jury that the grandfather was dead.

We will apply the law as stated, to the prayer of the plaintiff and the prayers of the defendants. We are of opinion that the Court erred in granting the second prayer of the plaintiff, because it did not submit to the jury to find that the grandfather of Mary on the part of the father was dead; unless they found that fact the plaintiff could not recover. And, for the same reason, we think the Circuit Court erred in rejecting the second prayer of the defendants, for until the jury found that the grandfather was dead, there was not sufficient evidence in the cause to prove title in the lessor of the plaintiff to the real estate in controversy. We concur with the Circuit Court in rejecting the first, third and fifth prayers of the defendants. We have said the petition and affidavit of the defendants constituted a solemn admission that the real estate had passed to them from Mary, the infant daughter of William Lannon, who died seized of the same, and they were therefore estopped from denying the title and possession of the party under whom they claimed, for it is a well settled principle that parties are bound by their written admissions made in the progress of a cause, and cannot repudiate them at their pleasure,

as the Courts in England, as well as in this country, have repeatedly decided that admissions made in a cause are proper and competent evidence on a second trial.  *Doe vs. Bird,* 7 *Carr. & Payne,* 7 ; *Jackson vs. Hinman,* 10 *Johnson,* 292 ; *Merchants' Bank vs. Marine Bank,* 3 *Gill,* 96 ; *Farmers Bank of Maryland vs. Sprigg,* 11 *Md. Rep.,* 389. As both parties claimed under the same person, it was only necessary for the plaintiff to prove his derivation of title from Mary Lannon, for the defendants had no right to impeach the title under which they were in possession. 2 *Greenleaf on Evidence, sec.* 307.   The reasons assigned for rejecting the first prayer of the defendants are equally valid against the third prayer.   Both parties claimed under Mary Lannon, and it was unnecessary for the plaintiff to produce any evidence of her title.   The defendants in their admissions relied on her title, and they cannot be allowed to gainsay it against a plaintiff who claims under the same title.   The defendants' fifth prayer ought not to have been granted.

The law of descents in Maryland expressly declares that there shall be no representation among collaterals after brother's and sister's children.   If there were no grandfather living at the time of the death of Mary Lannon, the real estate would have descended to her uncles, to the exclusion of her cousins, the children of Michael Lannon.   But the law of descents expressly provides, if there be no grandfather living, then to the descendants of such grandfather and their descendants in equal degree equally.   This would effectually exclude the cousins of Mary Lannon.   This construction is supported by authority, see *Porter vs. Askew,* 11 *Gill & John.,* 346 ; *Levering vs. Heighe, Adm.,* 2 *Md. Ch. Dec.,* 81; *Levering vs. Levering,* 3 *Md. Ch. Dec.,* 365.

The view which we have taken of the law of this case, dispenses with the necessity of reviewing the first bill of exceptions, and passing on the admissibility of the evidence contained in it.

The identity of the lands, and the possession of them by William Lannon and the defendants, are admitted, and there was no necessity for the plaintiff to introduce proof to establish what was admitted by the defendants.

We shall reverse the judgment of the Circuit Court with costs, and order a *procedendo* to be issued.

> *Judgment reversed and*
> *procedendo ordered.*

