Dickman, J.
This action was brought in the superior court of Cincinnati, by the plaintiff in error, the Peckham Iron Company, against the defendants in error, E. L. Harper, George E. Clymer, R. C. Trivett, Jr., William A. Rogers and William H. Harper, partners under the firm name of E. L. Harper & Company. It is alleged in the petition of the plaintiff below, that the plaintiff is a corporation duly organized and existing under the laws of the state of Missouri. As a first cause of action the petition alleges, that on or about August 19, 18,79, the defendants falsely and fraudulently represented to the plaintiff that they, as agents of the plaintiff, had made a contract with Mitchell, Tranter & Co., a firm doing business in the city of Cincinnati, for the purchase by the latter from the plaintiff, of three hundred tons of “Peckham blooms iron,” at the price of fifty dollars per ton; and during the months of October and November, 1879, the defendants procured from the plaintiff one hundred and eighty -|||-| tons of said iron, for the ostensible purpose of filling said contract. That the defendants did not, in truth, make said contract so represented by them to have been made, and did not appropriate said iron to the filling of any such contract, but converted the same to their own use. And, as a second cause of action, it is further alleged in the petition that, on or about March 15,1880, the defendants also converted to their own use 7-|-||-|- tons of iron, the property of the plaintiff.
Eor answer to the first cause of action the defendants admit their co-partnership, and say, that they have not, as individuals, had any dealings, of any kind, with the plaintiff, and that all their dealings and business with it have been as such copartners. They admit and allege, that the plaintiff is a corporation, incorporated and existing under the laws of the state of Missouri, and engaged in the business of manu *104 facturing blooms from iron ore. But, they deny each and" every averment and allegation contained in the first cause of action, in manner and form as therein stated, except as set forth in their answer. For answer to the second cause of action stated in the petition, they deny each and every averment and allegation therein contained in manner and form as therein stated.
On motion of the plaintiff, the answer of the defendants to the first cause of action stated in the petition, was stricken out as redundant and irrelevant, to which the defendants excepted. The defendants thereupon, by leave of the court, filed an amended answer to said first cause of action, and it was ordered, that the entry theretofore made, granting the plaintiff’s motion to strike out, he set aside. Upon filing this amended answer, the plaintiff moved to have stricken from the same as redundant, irrelevant and surplusage, a designated portion thereof containing, among other things, an admission of the corporate existence of the plaintiff, but also embracing a denial of each and every allegation in said-first cause of action not admitted in the amended answer. This'motion of the plaintiff to strike out, was granted only in part. The admission of the plaintiff’s corporate existence was stricken out with other matter, but the denial of the allegations in the first cause of action, as above stated, was left to constitute a part of the amended answer. To the order of the court thus granting in manner and form the motion of the plaintiff to- strike out, both plaintiff and defendants excepted.
At the trial in the court below, the plaintiff in order to prove that it is a corporation, and to prove its legal capacity to maintain this action, offered in evidence so much of the original answer of the defendants as in the words following, viz: “ The defendants further say, that the plaintiff is a corporation, incorporated and existing under the laws of the state of Missouri, and engaged in the business of manufacturing blooms from iro.n ore.” To which, the defendants objected, and called the attention of the court to the fact, that the said portion of said answer had, with other *105 portions, been stricken out by the court on the motion of the plaintiff; and that the amended answer denied that the plaintiff is a corporation as alleged in the petition. But the court overruled the objections of the defendants, and permitted the said portions of the answer to be read in evidence to the jury — to all of which the defendants excepted.
The trial resulted in a verdict and judgment for the plaintiff for a sum embracing the plaintiff’s counsel fees, and an unpaid balance on the iron in q estion at an estimated value of |70 per ton. A bill of exceptions, embodying all the evidence given to the jury and the charge of the court, was tendered and allowed. The district court on error reversed the judgment of the court below, upon the sole ground, that the court erred in admitting in evidence the admission contained in the original answer of the defendants to prove the corporate capacity of the plaintiff; the district court, without passing upon any other questions, holding that that fact could only be proved by the record of incorporation. This court is asked to reverse the judgment of the district court, and affirm that of the superior court.
Among the several assignments of error in the district court, the only ones which we deem it material to consider are, 1st. That the superior court erred in admitting in evidence, the admission contained in the original answer of the defendants, to prove the corporate capacity of the plaintiff. 2d. That the assessment of the amount of recovery was too large. 3d. That the superior court erred in ruling out, and in refusing to admit certain evidence offered at the trial by Harper & Co.
The district court based its reversal solely upon the first of the above alleged grounds of error; but, it is contended, that if the court erred in so doing, the judgment of reversal may be supported upon either of the other two grounds.
It is a well-settled rule, that parties are bound by their written admissions made in the progress of a cause as a. substitute for proof of any material fact, and cannot repu *106 diate them at pleasure. The admission of the existence of a corporation by pleading and setting forth the fact, comes within the rule, and is binding, as between parties to the suit, and in the same suit in which such admission is made. Carradine v. Carradine, 38 Miss., 698; Elwood v. Lannon's Lessee, 27 Md., 200. Harper & Co. in their original answer, alleged and admitted under oath the incorporation of the Peckham Iron Company. And the same admission was made in their amended answer: True, it was in both instances, from its juxtaposition, stricken out with other matter, on motion, as redundant. But though stricken out, the fact that the admission had been made under oath, was not thereby annulled. The order of the court granting the motion was excepted to by the defendants, and by so doing they preserved their admission as a part of the record. When offered in evidence by the plaintiff as a part of the original answer, it was still a part of the record, and had not lost its original character as a deliberate declaration or admission of the plaintiff’s corporate existence. The denial left in the amended answer after the admission of the plaintiff’s corporate capacity was stricken out, was not thereby enlarged, but remained as originally verified under oath, a denial in fact of that only which had not been admitted in previous parts of the amended answer.
Furthermore, the dealings of Harper & Co. with the Peck-ham Iron Company in its corporate name, were of such a nature as not to permit a plea by them of nul tiel corporation. In full recognition of the plaintiff as a body corporate, they got possession of the one hundred and eighty tons of iron in question. The transaction they turned largely to their own pecuniary profit and advantage; and in subsequent dealing with the plaintiff, in reference to a purchase of stock in its corporation, they fully recognized its corporate existence and capacity. Under such eircum.stances, we think that Harper & Co. are estopped to deny the legal existence of the plaintiff as a corporation. Bigelow on Estoppel, 464; Newburg Petroleum Co. v. Weare, 27 *107 Ohio St., 343; Farmers’ & Merchants’ Ins. Co. v. Needles, 52 Mo., 17; City of St. Louis v. Shields, 62 Id., 247.
As to the measure of damages — were they excessive? The relations existing between the plaintiff and Harper & Co. were those of trust and confidence. The latter were the agents of the former to sell the Peckham blooms iron on commission, and in effecting sales, were legally bound to act in the best faith towards their principals. Certainly they were not expected to report sales as made to others, while they, themselves, were the real purchasers to secure the benefit of a rising market. On August 16, 1879, the plaintiff, by letter, directed Harper & Co. not to offer for sale over two hundred tons of blooms. This letter in the regular course of mail, should have reached Cincinnati the next morning. But on August 18, Harper & Co. wrote to the plaintiff, that before the receipt of the letter of the 16th, they had sold three hundred tons of the blooms iron to Mitchell, Tranter & Co., fifty tons to be delivered as soon as possible, and the balance in November, December and January following. Yet, in fixing the date of this sale, E. L. Harper testifies, that it was not made until late in the afternoon of August 18. An order was at once enclosed to the plaintiff for the blooms said to have been sold to Mitchell, Tranter & Co., to be delivered in Cincinnati. It was an unwelcome order to the President of the Peckham Iron Company, who at once wrote to Harper & Co., “ I was in hopes my letter would reach you in time to stop the negotiations, as I did not want to make any further contracts for future delivery, preferring to take our chances of the market when we had the blooms to deliver.” E. L. Harper further testifies, that in a day or two after August 18, William H. Carruthers, one of the firm of Mitchell, Tranter & Co., informed him that of the three hundred tons of blooms, his firm had purchased fifty tons only, and that he was the purchaser of the balance. Yet, when the plaintiff wrote to Harper & Co. to know whether they could not get “ Mitchell, Tranter & Co. off with less than three hundred tons,” they reply, under date of August 23, “ Mitchell, *108 Tranter & Co. are unwilling to decrease their order below three hundred tons.” And even as late as October 6,1879, the plaintiff writes to Harper & Co., “ we want to know exactly what you sold them,” — Mitchell, Tranter & Co., — “ so that there will be no complaints hereafter about misrepresentations;” and Harper & Co., on the 8th of October, reply, “ the lot was sold to Mitchell, Tranter & Co.” While the plaintiff was thus being misled as to the real purchasers, the truth was, that Mitchell, Tranter & Co. were the purchasers of only fifty tons, and E. L. Harper and William H. Carruthers were secretly the purchasers, for their joint benefit, of the balance of the three hundred tons — at $50 per ton — Harper keeping the matter from his partners as being “ none of their business,” and Carruthers keeping his own firm in the dark, ’that E. L. Harper might sell to them and others, this very iron at an advanced price, ostensibly on behalf of Harper & Co., but really for the sole benefit and advantage of E. L. Harper and William H. Carruthers.
It was doubtless in view of these facts and others of a kindred nature, that the jury, as manifest from the verdict, must have found, that E. L. Harper, for the purpose of deceiving the plaintiff and getting possession of the iron in question, had falsely and fraudulently represented a sale of three hundred tons as having been made to Mitchell, Tranter & Co.; and after having thus acquired possession, had colluded with Carruthers to gather the' fruits of the fraud.
It is a fundamental rule, that an agent employed to sell cannot be a purfchaser, unless he is known to his principal to be such; nor is the rule inapplicable or relaxed when the employment is to sell at a fixed price. Ruckman v. Bergholz, 37 N. J. L., 437. The law will not suffer one to earn a profit, or expose him to the temptation of a dereliction of his duty, by allowing him to act at the same time, in the double capacity of agent and purchaser. Church v. Marine Ins. Co., 1 Mason, 341. As said by Chancellor Walworth in Van Epps v. Van Epps, 9 Paige, 241, “ It is a rule which applies universally to all who come within its principle, *109 which principle is, that no party can be permitted to purchase an interest in property and hold it for his own benefit, when he has a duty to perform in relation to such property, which is inconsistent with the character of a purchaser on his own account and for his individual use.”
The verdict returned by the jury in this case — made up as it was in part of plaintiff’s counsel fees, and damages accruing from the loss of a rising market in iron — is to be regarded as rather compensatory than punitive in its character. But, it is contended, that from the amount of the verdict, the jury must have allowed exemplary damages, and the question arises, whether upon such a state of facts as the jury must have found, exemplary damages were authorized. We think that where an agent by false and fraudulent representations to his principal, obtains possession of his principal’s goods and converts them to his own use, exemplary damages may be allowed; and in such a case, the jury, in estimating the damages, may include the plaintiff’s reasonable counsel fees as an item of compensation. Roberts v. Mason, 10 Ohio St., 277; Finney v. Smith, 31 Id., 534, 535. Upon a review of all the testimony, we are not prepared to say, that the verdict rendered by the jury in this case is not sustained by sufficient evidence; or, that the ingredient of fraud entering into the transaction and brought home to Harper & Co., was inadequate or of such a character as not to justify the amount of damages awarded.
The false representations by E. L. Harper were made in the name of his firm, and in the course of its regular business. His partners are therefore bound, though they may have had no knowledge of, or connection with, his dealings with the plaintiff. Fraudulent representations by one partner, in the course of the partnership business; will bind the firm and create a liability coextensive therewith. Story on Part., §§ 108, 131.
It is contended in behalf of the defendant, that the superior court erred, in excluding evidence offered to show that the Peckham Iron Company had previously authorized *110 Harper & Co. to sell blooms on the terms of the sale reported. But such evidence, in our judgment, was not relevant to the issue. The question was not, whether the terms of the sale exceeded the authority of the defendants; or whether the terms would have been ratified if submitted to the plaintiff; but whether the defendants by falsely and fraudulently representing to the plaintiff that they had sold three hundred tons of iron to Mitchell, Tranter & Co., thereby obtained possession of the same, and with the ostensible purpose of filling the sale converted the iron to their own use. Being satisfied from an examination of the whole record, that there is no ground of error upon which the reversal by the district court of the judgment of the superior court can be sustained, the judgment of the district court must be reversed and that of the superior court affirmed.

Judgment accordingly.