(No. 20368.—)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* ARTHUR FAUGHT *et al.* Plaintiffs in Error.

*Opinion filed February 18, 1931—Rehearing denied April 10, 1931.*

ORR, J., dissenting.

LEWMAN & CARTER, and JAMES M. BOYLE, for plaintiffs in error.

OSCAR E. CARLSTROM, Attorney General, ELMER O. FURROW, State's Attorney, and MERRILL F. WEHMHOFF, (CHARLES CRAYTON, O. W. LONGENDECKER, and LOUIS J. BREMER, of counsel,) for the People.

Mr. JUSTICE DeYOUNG delivered the opinion of the court:

Arthur Faught and Morris D. Smith were convicted in the circuit court of Vermilion county of the murder of Frank O. Royer and were sentenced to imprisonment in the Southern Illinois Penitentiary for terms of twenty-five and fourteen years respectively. They prosecute this writ of error for a review of the record.

Frank O. Royer was twenty-six years of age, married and lived in the city of Danville, in Vermilion county. He was engaged in the illegal sale of intoxicating liquor. Faught and Smith were each thirty-four years old and resided in the same city. The evidence fails to disclose Faught's occupation. Smith conducted a restaurant and had been a friend of Royer and his wife about five or six years and often visited them.

On the evening of February 11, 1930, at about seven o'clock, Faught, who was driving an automobile, stopped at Smith's restaurant. Smith asked Faught to convey him to Royer's home, and Faught complied with the request. Smith entered the house, but Faught remained outside. After Royer and Smith had taken several drinks of liquor at the latter's expense, Smith said he desired to purchase a considerable quantity of alcohol for a third person. Royer answered that he was not engaged in the business at wholesale, but named a person who might supply it. Smith replied that he could not do business with the person suggested whereupon Royer stated that he would see what he could do. Immediately thereafter Smith departed. He returned about an hour later again accompanied by Faught. Mrs. Royer told them that her husband was absent from the house and she refused to admit them. Later in the evening they passed Royer's home three or four times in an automobile and finally, about midnight, stopped in front of the house. Royer, his wife, his brother-in-law and the latter's wife, were sitting in the house with the lights ex-

tinguished. Faught remained in the automobile, but Smith walked to the front door, knocked, shook the screen door and asked for admittance. Royer answered that he would admit him, opened the door, and without a word of warn-. ing struck Smith in the face. Smith testified that Royer struck him on the nose with an instrument which he thought was a gun. The blow threw Smith to the floor of the porch and Royer fell upon him. Faught left the automobile and approached the porch as Royer was rising to his feet. The three persons who remained in the house testified that Faught fired twice at Royer after which they went to another part of the house and heard five more shots fired. Faught testified that as he approached the porch for the purpose of separating Royer and Smith, the former shot him twice; that he, Faught, reached for his gun, but before he could make use of it, Royer shot him the third time, and that he then attempted to shoot the revolver from Royer's hand. An employee of a brewery across the street testified that he saw two men scuffling on Royer's porch; that a third man approached and two shots were fired, and that later he heard additional shots. Smith testified that he was in a dazed condition from his fall. He was not armed and took no part in the shooting. The three men were taken to a hospital, where it was found that Faught was wounded in the abdomen, in the right elbow and in the left leg; that Royer was shot in the abdomen and that Smith suffered a slight hip wound. Royer died the next day.

Several contentions are relied upon for a reversal of the judgment. The first to be considered relates to the cross-examination by an assistant State's attorney of two witnesses who had testified that the general reputation of the plaintiff in error Smith as a peaceable citizen was good, and the second concerns the argument made to the jury in behalf of the prosecution. An assistant States' attorney asked the first witness "Did anybody ever tell you he," referring to Smith, "was in the Michigan penitentiary?" Ob-

jection was made, the question was repeated, and the court then directed the jury to disregard the question. The second witness was asked "What was he," again referring to Smith, "doing at the time he was arrested in Crawfordsville?" An objection to the question followed but there was no ruling upon the objection. The assistant State's attorney then asked "If you know?" Another objection brought a repetition of the latter question and a further objection to it. The prosecutor then withdrew the question and added that the jury could be instructed to disregard it. Upon the suggestion by counsel for the plaintiffs in error that instructions to the jury should be given by the court and not by counsel, the court directed the jury to disregard the question. There was no evidence that the plaintiff in error Smith had ever been a prisoner in any penitentiary or that he had ever been arrested in Crawfordsville. Another assistant State's attorney, in his argument to the jury, asserted that the plaintiff in error Smith had gone into gangland and that he, the attorney, might explain why Smith had been in Michigan City. An objection to the former assertion was overruled and the latter assertion evidently had reference to the Indiana State penitentiary. Neither assertion had any evidence to support it. The manifest purpose of the questions asked on cross-examination and of the assertions made in the argument to the jury, of which complaint is made, was to create a prejudice in the minds of the jurors against the plaintiff in error Smith. These infractions of the rules concerning proper cross-examination and argument were wholly without justification and prosecuting counsel should not have resorted to them.

Complaint is made of certain instructions given to the jury at the request of the prosecution. Only two of these instructions, the second and eighth, need to be considered. The second was as follows:

"The court instructs the jury, as a matter of law, that in this case to constitute the crime of murder it is not nec-

essary for the State to show that it was, or may have been the original intent of the defendants, or either of them, to kill the deceased, Frank O. Royer. It is sufficient, if the jury believe from the evidence, beyond a reasonable doubt, that the defendants combined to do an unlawful act, and that the deceased was killed by the defendants, or either of them, in the attempt to execute such purpose."

A person who enters into an agreement with others to commit a criminal offense, under such circumstances as will, when tested by experience, probably result in the unlawful taking of human life, must be presumed to understand the consequences which reasonably may be expected to flow from carrying the unlawful combination into effect and to assent to the doing of whatever reasonably or probably will be necessary to accomplish the objects of the conspiracy, even to the taking of life. Every party to such an agreement will be held criminally liable for whatever any of his co-conspirators may do in furtherance of the common design, whether he is present or not. Where, however, the unlawful act agreed to be done is not of a dangerous or homicidal character, and its accomplishment does not necessarily or probably require the use of force or violence which may result in the unlawful taking of human life, the criminal liability of the actual offender will not attach to another person merely because the latter was a party to the agreement. *Lamb* v. *People,* 96 Ill. 73; 1 McClain's Crim. Law, sec. 196.

It appears from the evidence that Faught, at Smith's request, drove the latter in an automobile to Royer's house. Smith not only bought intoxicating drinks from Royer but sought to purchase from him for a third person a large quantity of liquor. The law had been violated and another violation of the law was intended. If it be assumed that the plaintiffs in error combined or conspired to that end, yet the proposed purchase of liquor neither contemplated the destruction of human life nor even the use of force in any

degree by the plaintiffs in error, and it did not justify Royer's resort to violence against either of them. The jury might infer from the second instruction that if the plaintiffs in error had combined unlawfully to purchase liquor, although Royer was shot in self-defense, or the homicide was the independent act of one of the confederates and foreign to the common design, they were nevertheless guilty of murder. The instruction as applied to the evidence in this case was erroneous and prejudicial to the plaintiffs in error.

The eighth instruction reads as follows:

"The court instructs the jury that to justify the use of firearms in self-defense, the defendants in this case must show that the danger to their person or to the person of some member of their family, or of some person upon their premises, or other person mentioned in these instructions was so urgent and pressing that a reasonable man would suppose, from the words, acts and conduct of Frank O. Royer, at the time and place in question, that it was necessary to shoot to save life or prevent great bodily harm, and that defendants, in shooting, believed in good faith, that such urgent and pressing danger then existed."

The evidence affords no basis for this instruction. The shooting occurred upon the premises of the decedent and not upon the premises of the plaintiffs in error and no member of the family of either plaintiff in error was present at the time. Hence none of the persons to whom reference is made in the instruction, other than the plaintiffs in error, was exposed to danger by the shooting. Likewise, the assumption that both plaintiffs in error participated in the shooting is erroneous for Smith was not armed and there is no claim that he fired a shot. Instructions should be confined to a statement of the rules and principles of law applicable to the evidence in order that the jury may be aided in arriving at the correct determination of the issues involved in the case. Moreover, in the absence of an instruction that, if the jury entertained a reasonable doubt

as to whether the shooting was done in self-defense, they should acquit, the eighth instruction required too high a degree of proof of facts justifying the use of firearms in self-defense. The instruction was erroneous and prejudicial and should not have been given.

The judgment of the circuit court of Vermilion county is reversed and the cause is remanded to that court.

*Reversed and remanded.*

Mr. JUSTICE ORR, dissenting.