(No. 22543.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* ARTHUR FAUGHT *et al.* Plaintiffs in Error.

*Opinion filed December 20, 1934—Rehearing denied Feb. 6, 1935.*

LEWMAN & CARTER, and J. M. BOYLE, for plaintiffs in error.

OTTO KERNER, Attorney General, OLIVER D. MANN, State's Attorney, and J. J. NEIGER, for the People.

Mr. JUSTICE ORR delivered the opinion of the court:

Arthur Faught and Morris D. Smith, the plaintiffs in error, were in March, 1934, found guilty by a jury in the circuit court of Vermilion county of the murder of Frank

O. Royer. After their motions for a new trial and in arrest of judgment had been overruled they were sentenced to the penitentiary in accordance with the jury verdict, Faught for a term of twenty-five years and Smith for twenty years. A reversal is sought by this writ of error.

Faught and Smith were tried and convicted once before upon this charge. The first trial occurred in May, 1930, and the judgment resulting therefrom was reviewed by this court and the judgment was reversed and the cause remanded. (*People* v. *Faught,* 343 Ill. 312.) The judgment of reversal and remandment was filed in the office of the clerk of this court on February 18, 1931. The mandate of this court was filed in the trial court March 1, 1934, at which time a motion was made by the then serving State's attorney to re-instate the case. This motion was objected to by the defendants upon the ground that more than two years had elapsed from the time the final order of this court was made. The objections were overruled by the trial court and the case was re-instated.

The errors assigned do not require a re-statement of the facts, as they are substantially stated in the former opinion. (*People* v. *Faught, supra.*) The defendants argue that the mandate of this court should have been filed within one year, and cite sub-section 3 of section 88 of article 8 of the present Civil Practice act. (Cahill's Stat. 1933, chap. 110, par. 216, subdiv. 3.) Before the Civil Practice act went into effect the Practice act of 1907, in section 114, (Appendix, Cahill's Stat. 1933, chap. 110, par. 114;) provided that if neither party shall file such transcript (mandate) until after two years have elapsed from the making of the final order by this court which reverses any judgment or proceeding the cause shall be considered abandoned and no further action shall be taken. The defendants endeavor to tie the two cited statutory enactments to criminal cases by citing section 13 of division 15 of the Criminal Code, passed in 1933. (Cahill's Stat. 1933, chap. 38, par. 839(1).

Neither the brief of the People nor that of the defendants furnishes much aid to us in the solution of this point. No citation of a case bearing upon the application of section 114 of the Practice act of 1907 to criminal cases has been furnished. The Civil Practice act, and the addition to the Criminal Code containing section 13 of division 15 thereof, did not go into effect until January 1, 1934. Until that time section 114 of the Practice act of 1907 was in force. In *People* v. *Murphy,* 296 Ill. 532, the pertinent facts were that John Murphy had been sentenced to prison on March 20, 1915, and on September 30, 1920, he sued out a writ of error to reverse the judgment. The Attorney General filed a plea setting up the limitation created in section 117 of the Practice act of 1907—*i. e.,* that the writ had not been sued out within three years after the rendition of the judgment. We held that the writ of error used in criminal cases in this State was a common law writ and the limitation thereon was twenty years. We there said, in speaking of the Practice act of 1907: "The title of that act is, 'An act in relation to practice and procedure in courts of record,' and it applies to and controls the method of procedure in civil suits on the law side in trial courts, but it has been held to have no reference, in general, to proceedings in chancery or criminal cases in trial courts unless such cases are expressly mentioned." In *People* v. *Ficke,* 343 Ill. 367, we had to determine whether or not section 81 of the Practice act of 1907 applied to and governed procedure in criminal cases. We there held that the provisions of that act did not apply to criminal cases unless the language of the act expressly or by clear implication referred to criminal cases. Express language cannot be found in the Practice act of 1907 which makes section 114 thereof applicable to criminal cases. Equally so, we can not make out a case of clear implication from the language of the act. No precedent or logic requires us to hold that because the Civil Practice act is made applicable to crim-

inal proceedings after January 1, 1934, section 114 of the Practice act of 1907 applies to criminal cases arising before that time. This would cast the Civil Practice act in the role of an *ex post facto* law, and in any event would not aid the defendants, for the law would not commence to run as a matter of limitation until after its passage, in July, 1933. If under the common law procedure a convicted person had twenty years in which to sue out a writ of error to review the judgment which hung over him, surely it is not beyond the bounds of reason to hold that a failure of the prosecuting official to file the mandate of this court for about three years does not constitute an abandonment of the case. If the act does not say it is retroactive then it is to be construed as prospective only. *People* v. *David,* 336 Ill. 353.

Smith maintains that his conviction was the result of the jury being prejudiced against him and that the evidence does not show him guilty of the crime charged in the indictment. The evidence, in substance, discloses that Smith and Royer had been friends for several years. This friendly status had extended also to the wife of the deceased. Smith wanted five gallons of alcohol for an acquaintance. He went to Royer to procure the same, knowing him to be engaged in illegal liquor traffic. Royer was not a wholesaler of alcohol but offered his services in trying to get that amount. Smith and Faught drove to or past the Royer home five different times that evening, stopping on three occasions to see if they could obtain the alcohol. What reason, if any, Royer had for striking Smith on his fifth visit there the record does not disclose. Royer was armed when he struck Smith. There is evidence that he was not armed when Smith called the first time and that he had only armed himself about two hours before the killing. Royer was a larger man than Smith, physically, and Faught, who came to Smith's assistance with pistol in hand, was about six feet six inches tall and weighed 210

pounds. The fact that Smith and Faught had made so many trips to Royer's house and on two out of the five occasions had been unable to see him personally, indicates that Royer may have armed himself prior to their last visit because he feared personal injury. It was midnight when they came to Royer's house the last time and Royer and several guests were in the "sitting room," with the lights turned off. After Royer had opened the door and knocked Smith down there is no evidence that he pulled his gun out of his pocket or attempted any further violence until Faught came over and shot him. He then shot Faught several times but made no effort to shoot Smith.

The record shows that Royer and Smith had been friends and no reason or circumstance appears to show any feud or trouble between them. Smith was unarmed, and was intoxicated when his last call at Royer's home provoked the latter to assault him. After Royer knocked him down Smith did nothing more serious than to hold Royer's legs and yell for Faught to come to his assistance. The testimony for the People failed to include any proof, on any possible theory, from which Smith could lawfully be found guilty of murder. Under the state of the evidence the trial court erred in not allowing the motion for a directed verdict of not guilty as to Smith at the close of the People's evidence.

We have examined the record with respect to the various errors assigned and find none of them serious enough to warrant a reversal of the case as to Faught. It was not reversible error for the trial court to deny the offer of proof that Royer was a fighting man, as the offer was not made in the proper manner. Nor was it necessary for the People to prove an intent, as we have frequently held that intent to kill does not enter into the definition of murder, and proof of general malice is sufficient. *People* v. *Russell,* 322 Ill. 295; *People* v. *Guido,* 321 id. 397.

Objections are made to different instructions in the argument, but these objections are considered waived under the authority of *People* v. *Bureca,* 355 Ill. 202, and *McCann* v. *People,* 226 id. 562.

The evidence fairly tended to support the verdict and judgment as to Faught, and no errors are shown such as would justify a reversal in his case. The judgment is therefore affirmed as to Faught and reversed as to Smith.

*Judgment affirmed as to Faught.*
*Judgment reversed as to Smith.*