### DAVID LEROY LAMAR *v.* STATE OF MARYLAND

[No. 66, September Term, 1968.]

*Decided January 14, 1969.*

The cause was argued before MURPHY, C.J., and ANDERSON, MORTON, ORTH, and THOMPSON, JJ.

---

*Vernon G. Frame* for appellant.

*H. Edgar Lentz, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Julian B. Stevens, Jr., State's Attorney for Anne Arundel County,* and *T. Joseph Touhey, Assistant State's Attorney for Anne Arundel County,* on the brief, for appellee.

THOMPSON, J., delivered the opinion of the Court.

David Leroy Lamar, the appellant, was convicted of assault with intent to rape and assault in a jury trial before Judge Matthew S. Evans of the Circuit Court for Anne Arundel County. Lamar was sentenced to sixteen years.

There was evidence from which the jury could have found the following:

At about 1:30 on the morning of April 26, 1967 Carol Ann Cochran, the victim, left Patton's Luncheon in Odenton, Anne Arundel County, with her friend, Robert Holland. They had been out that evening with Carol's friends, Kathy North, Evelyn Roberts and Sharon Lee (Linda) Malone. The three girls, who were roommates, were accompanied by two soldiers. Carol Ann and Robert Holland went to her apartment. While at her apartment a misunderstanding arose and Robert left soon thereafter. Meanwhile the other three girls and their male companions had gone to the girls' apartment which was about a block from Carol Ann's.

At about 3:00 in the morning Carol Ann, upset and unable to sleep because of the argument, got dressed and walked the block to her friends' apartment. She wanted to talk to Linda; however, when she arrived Kathy North, who answered the door, told Carol Ann that Linda was asleep. Carol Ann then left. She testified that on her way home, she met Lamar, the appellant, in Patton's parking lot. She knew him because he had been a customer in the tavern where she worked, and she had also observed him prowling around her apartment a few days before. As Carol Ann approached Lamar, he stated that he wished to talk to her about the trouble he had recently at her place of employment. She went by him and continued walk-

ing, and when she turned around she realized that he was following her and she began running. Carol Ann testified that she knew she would not be able to get into her locked apartment fast enough, so, seeing the lights at nearby Meade Heights, she ran toward these hoping for safety. After running a short distance she stopped, thinking Lamar had discontinued his chase, when in fact he was approximately 10 feet behind her. She screamed and started running again, but he caught up with her and knocked her to the ground. He hit her several times, put his hand over her mouth and stated that he wanted a "relationship." He pulled her slacks and underwear down around her ankles and her blouse and bra up around her neck. She was observed in this condition by a police officer and the three girlfriends, all of whom responded to her screams. The victim was beaten so severely that she lost two weeks from work.

Linda, although half asleep, overheard Carol Ann ask for her; so she decided to dress and go over to Carol Ann's apartment at once. When she emerged from her apartment building she saw Carol Ann and called to her, but apparently she was not heard. Linda then began to run in order to catch up with Carol Ann; however, she lost sight of her when she ran down to the parking lot of Patton's Luncheon. She returned to her apartment and enlisted the aid of her friends stating that she had heard Carol Ann scream and had seen "Dave" chasing her. (Linda knew Lamar in the same capacity as the prosecutrix and knew him by the name of "Dave"). The three girls and the two soldiers began looking for Carol Ann. In a well lighted field adjoining the parking lot Kathy found footprints which she followed until Lamar emerged from the bushes. She called out his name "Dave." He stopped and turned around, but then began running again.

Carol Ann, Kathy and Linda all identified Lamar at a lineup. The lineup was conducted twice and they identified him both times. Kathy and Linda identified Lamar in court as the man they saw leaving the bushes in the vicinity of the prosecutrix, and Carol Ann identified him as the man who assaulted her.

Lamar contends the lower court committed error by failing to cure the prejudicial effect of an improper question proposed

by the State's Attorney. The alleged error occurred when Lieutenant Gerald Lee Kenney, a lieutenant in the army stationed at Fort Meade, Maryland, was called as a witness for the defendant. On cross-examination the following occurred:

> "Lieutenant Kenney, you have in your possession official records of the defendant, David Leroy Lamar?
> "Yes, I do.
> "And these are records kept by the United States Army in the regular course of business as to this individual?
> "Yes, they are.
> "And does that record also contain any record or information as to prior criminal convictions as to this individual?
>> "MR. CARMODY: I object. I object. The defendant's character is not at issue at this point. I beg the Court to admonish the State's Attorney and instruct the Jury as to the impropriety of this question.
>> "COURT: Would you two approach the Bench, please?
>> "MR. TOUHEY: The State will withdraw the question. Thank you, Lieutenant, no further questions."

The requested instruction was not given.

It has been a long established rule in Maryland that the accused's character cannot be attacked by the State by showing prior convictions until the accused has testified.[1] *Cook v. State,* 225 Md. 603, 171 A. 2d 460. See *Woodell v. State,* 2 Md. App. 433, 437-38, 234 A. 2d 890. Lamar cites numerous cases standing for the proposition that such an attack would be reversible error. *Gallman v. State,* 195 So. 768 (Ala. 1940), *Gonzales v. State,* 97 So. 2d 127 (Fla. 1957), *Pilcher v. State,* 85 S.E.2d 618 (Ga. 1955), *People v. Kingcannon,* 114 N. E. 508 (Ill. 1916), *People v. Faught,* 175 N. E. 446 (Ill. 1931), *State v. Dixon,* 253 S. W. 746 (Mo. 1923) and *State v. Jones,* 268

---

1. Lamar did not testify at the trial.

S. W. 83 (Mo. 1924). We note, however, that in all of these cases there were also other reasons for the reversals.

1 Wharton *Criminal Evidence* § 232 at 497 (12th Edition) states the law as follows:

> "When the proof of the commission of another crime is not proper, it is likewise improper for the prosecution to state or insinuate that such crime has been committed, whether in the examination of witnesses or in the address to the jury. A conviction may be set aside for violation of this rule."

See, however, the 1968 supplement to Vol. 1 at 107 as follows:

> "The improper admission of proof of other crimes does not always constitute reversible error and convictions may be sustained when the nature of the other crimes is so minor that it is unlikely that the defendant was prejudiced, or the evidence of guilt so strong that it is improbable that a contrary result would be reached." (Footnotes omitted)

*Chapman v. California,* 386 U. S. 18, 23, 87 S. Ct. 824, 827, 17 L.Ed.2d 705 defined a harmless error as one which would have "little if any likelihood of having changed the result of the trial." We have followed that principle in our cases dealing in harmless error.[2] Since evidence of guilt in this case is so overwhelming we have no difficulty in holding that one unanswered question concerning Lamar's criminal record did not, in any way, change the result of the trial.

*Judgments affirmed.*

---

2. *Lewis v. State,* 2 Md. App. 318, 234 A. 2d 487, *Grice v. State,* 2 Md. App. 482, 235 A. 2d 316, *Sparkman v. State,* 3 Md. App. 527, 240 A. 2d 328, *Gunn v. State,* 4 Md. App. 379, 243 A. 2d 15, *Brown v. State,* 4 Md. App. 612, 244 A. 2d 444, *Jones v. State,* 4 Md. App. 616, 244 A. 2d 459.