483 A.2d 81

**Patrick Francis CURTIN**

v.

**STATE of Maryland.**

**No. 1773, Sept. Term, 1983.**

Court of Special Appeals of Maryland.

Nov. 8, 1984.

Barbara Matthews, Assigned Public Defender, with whom was Alan H. Murrell, Public Defender on brief, for appellant.

Valerie J. Monaghan Smith, Asst. Atty. Gen., with whom were Stephen H. Sachs, Atty. Gen., Andrew L. Sonner, State's Atty., for Montgomery County and John Severt, Asst. State's Atty., for Montgomery County on brief, for appellee.

Argued before ADKINS and BELL, JJ., and ROBERT L. KARWACKI, Associate Judge of the Eighth Judicial Circuit (now Associate Judge of the Court of Special Appeals), Specially Assigned.

KARWACKI, Judge.

The appellant was convicted in a trial by jury in the Circuit Court for Montgomery County (James S. McAuliffe, Jr., J., presiding) of assaulting Officer Barry L. Abramowitz of the Gaithersburg City Police Department and Officer David Godbold of the Montgomery County Police Department, of resisting arrest and of violating Maryland Code (1957, 1981 Repl.Vol.), Art. 2B, § 207(a)(2), which provides:

(a) A person may not: ...

(2) Be intoxicated or drink any alcoholic beverage in a public place and cause a public disturbance.

For each assault and for resisting arrest the appellant was sentenced to five years. The imprisonment was suspended and he was placed upon a five year supervised probation. He was fined $100.00 for the violation of § 207(a)(2).

There was evidence from which the jury could have found that the following took place shortly after midnight on July 10, 1982. At that time Officer Maryann Troutner of the Gaithersburg City Police Department, who was alone in her patrol vehicle, had apprehended a drunk driving suspect on the parking lot of the Orchard Pond Apartments, a short distance from the public highway. As Officer Troutner was engaged in placing the arrested suspect in her police cruiser she was approached by the appellant who loudly asked her, "What the fuck you think you're doing." The appellant had an open bottle of Heineken beer in his hand and Officer Troutner asked him what he was drinking. The appellant replied "beer." The appellant's demeanor was abrasive, his eyes were "watering," he was unsteady on his feet and Officer Troutner concluded that he had been drinking. Because she believed he was violating Maryland Code (1957, 1981 Repl.Vol.), Art. 2B § 211, which prohibits the drinking of alcoholic beverages on public property, she asked him for identification. The appellant advised her that his identification papers were in his van which was parked nearby and he proceeded to get them. On the way he finished drinking the beer. Officer Troutner waited with the arrested drunk-

en driver for five to ten minutes while the appellant was in his motor vehicle. During that time, she became apprehensive that she was going to have trouble and called on her radio for backup assistance.

When the appellant returned with his identification papers, Officer Troutner asked him to stand behind the cruiser to which he replied, "I'll stand anywhere I fuckin' please." The appellant then continued to protest the Officer's actions in the presence of a group of about ten bystanders that had congregated. Officer Troutner decided at this point to issue the appellant a citation for public drinking. Md.Code (1957, 1982 Repl.Vol., 1984 Supp.) Art. 27, § 594B(j); Md. District Rule 711.[1] While she wrote the ticket, the appellant continued to protest her actions loudly, prompting a woman in one of the nearby apartments to yell from a window to keep down the noise in the parking lot. By the time Officer Troutner had completed writing the citation, Officers Godbold and Abramowitz, as well as three other police officers, had arrived on the scene in response to the backup call issued earlier by Officer Troutner. When Officer Godbold attempted to quiet the appellant, the appellant suggested that Officer Godbold take off his badge and they could settle the dispute then and there.

Officer Troutner then explained to the appellant that he was being issued a citation for public drinking; that he could go on his way and that a court date would be set if he signed it, but that if he refused he would be arrested. The appellant read the citation, then slammed the pen down on Officer Troutner's cruiser stating loudly, "I'm not signing any fuckin' ticket." Officer Abramowitz then took hold of the appellant's arm and told him he was under arrest. A struggle then ensued between the officers and the appellant and after several minutes the appellant was subdued and placed in the cruiser of Officer Abramowitz. A few min-

---

1. Now embodied within Md.Rule 4–202.

utes later the appellant tried to break away from custody and stumbled out of the cruiser.

He was placed back into the police vehicle and transported to the Germantown Police Station in the back seat of the vehicle under physical restraint by Officer William Mortall. In the course of this melee, Officer Abramowitz was struck and kicked and Officer Godbold was bitten by the appellant.

When the appellant arrived at the Germantown Police Station, he was placed in the holding cell. He began screaming, yelling and throwing chairs around the cell, so that it became necessary to handcuff him to the cell bench. Thereafter the appellant began screaming again and jumping up and down on the bench in his cell, requiring the officers to cuff his legs as well.

The appellant prayed a jury trial in the District Court and the case was transmitted to the Circuit Court for Montgomery County.

In this appeal the appellant asserts that there was no legally sufficient evidence to support his convictions, that the trial judge gave the jury an improper advisory instruction as to the meaning of § 207, and that evidence of the appellant's conduct at the police station following his arrest was improperly admitted.

### Sufficiency of the Evidence

The challenge to the sufficiency of the evidence of the assaults upon the two police officers and resisting arrest is based upon the appellant's contention that his arrest on the parking lot of the Orchard Pond Apartments on July 10, 1982, was illegal. He points out that since Officer Troutner was acting under the misapprehension that the parking lot was "public property" within the prohibition of § 211, when she attempted to issue a citation to him charging him with a violation of that section, his subsequent arrest was illegal.[2] We believe his contention

---

**2.** § 211 provides:

344

meritless for either of two reasons. The issue of the appellant's legal arrest depends not upon whether Officer Troutner correctly assumed that the parking lot in question was public property within the definition of that term as used by the Legislature in enacting § 211, but whether there was evidence from which the jury could conclude that Officer Troutner possessed probable cause to believe that § 211 had been violated. The rule of probable cause has often been characterized as a "non-technical conception of a reasonable ground for belief of guilt requiring less evidence

---

(a) a person may not drink any alcoholic beverage, as defined in this article, while:

(1) On public property, unless authorized by a governmental entity that has jurisdiction over the property;

(2) On the mall, adjacent parking area, or other outside area of any combination of privately owned retail establishments, like a shopping center, where the general public is invited for business purposes, unless authorized by the owner of the shopping center;

(3) On an adjacent parking area or other outside area of any other retail establishment, unless authorized by the owner of the establishment; or

(4) In any parked vehicle located on any of the places enumerated in this subsection, unless authorized.

(b) Subsection (a) does not apply to the consumption of alcoholic beverages by passengers in the living quarters of a motor home equipped with a toilet and central heating or the passengers of a chartered bus in transit if the owner or operator has consented to the consumption of the beverages.

This section is contained within a subheading entitled, "Drinking in Certain Places." *See* Maryland Code (1957, 1981 Repl.Vol.) Art. 2B, § 210, under the same subheading which states:

(a) Definitions.—(1) In this subheading the following word has the meaning indicated.

(2) "Public property" includes any building, ground, park, street, highway, alley, sidewalk, station, terminal or other structure, road or parking area located on land owned, leased, or operated by this State, a county, a municipality, Washington Suburban Sanitary Commission, Maryland National Capital Park and Planning Commission, Montgomery County Revenue Authority, or Washington Metropolitan Area Transit Authority.

(b) Subheading inapplicable in certain counties.—This subheading does not apply in the following subdivisions:

(1) Cecil County.

(2) Charles County.

(3) Kent County.

(4) Queen Anne's County

for such belief than would justify conviction, but more evidence than that which would arouse mere suspicion." *Collins v. State,* 17 Md.App. 376, 384, 302 A.2d 693 (1973). Given the proximity of the site of arrest to the public highway and the further fact that by virtue of Art. 2B, § 210, private parking lots of certain kinds of commercial ventures are included within the definition of public property on which drinking is prohibited by § 211, we believe that the evidence was sufficient to permit the jury to conclude that Officer Troutner, under the facts and circumstances present in the early morning hours of July 10, 1982, was justified in believing that a violation of § 211 was taking place.

Moreover, the jury could also have concluded, based upon the evidence, that Officer Troutner possessed ample probable cause to believe that the appellant had violated Art. 2B, § 207(a)(2). The fact that Officer Troutner cited the wrong section of Art. 2B of the Code in placing the appellant under arrest is of no consequence. *Braxton v. State,* 234 Md. 1, 197 A.2d 841 (1964). He appeared intoxicated and she witnessed his consumption of an alcoholic beverage. We believe the parking lot of this apartment complex was a *public place* within the meaning of § 207, and that the appellant was creating a *public disturbance* thereon. The words just emphasized from § 207(a)(2) have not previously been interpreted by the Court of Appeals or this Court. We therefore construe them according to their ordinary and normal meaning unless a different legislative intent is indicated by the context. *Blake v. State,* 210 Md. 459, 124 A.2d 273 (1956). Clearly, the use in § 211 by the legislative draftsmen of the term "public property" with its attendant definition in § 210 of the same subheading shows a legislative intent to prohibit mere consumption of alcohol more limitedly than disorderly drinking or intoxication. *Public property* as defined in § 210, as applicable in § 211 is a much more limited term than *public place* used in

§ 207(a)(2), and clearly indicates the intent of the Legislature to make a distinction between the two types of situs.

In Webster's Seventh New Collegiate Dictionary (1969), "public" is defined as "a place accessible or visible to the public." In Webster's New World Dictionary, 2d ed. (1976) "in-public" is defined as "openly; not in private or in secrecy." "Disturb" is defined as "to break up the quiet or serenity of; agitate ... to break in on; interrupt; interfere...." "Disturbance" is defined as "... commotion; disorder." Webster has also defined "disturb" as "to interfere with the lawful enjoyment of a right." Black's Law Dictionary, (Rev. 5th ed.) defines disturbance as follows:

> Any act causing annoyance, disquiet, agitation, or derangement to another, or interrupting his peace, or interfering with him in the pursuit of a lawful and appropriate occupation or contrary to the usages of a sort of meeting and class of persons assembled that interferes with its due process or irritates the assembly in whole or in part.

Appellant's reliance on *Diehl v. State,* 294 Md. 466, 451 A.2d 115 (1982). to justify his outrageous conduct is misplaced. *Diehl* does not stand for the proposition that one is privileged to disturb the public peace in the middle of the night and interfere with police officers in the lawful performance of their duties. We conclude that the parking lot was a *public place* and that the appellant's conduct thereon amounted to a *public disturbance* justifying his arrest for violation of § 207(a)(2).

Since there was evidence from which the jury could have concluded that the appellant's arrest was valid, it follows that sufficient evidence was presented to support the jury's determination that he was guilty of assaults upon Officers Abramowitz and Godbold and of resisting a valid arrest. *Jones v. State,* 4 Md.App. 616, 244 A.2d 459 (1968); *Preston v. Warden,* 225 Md. 628, 169 A.2d 407, *cert. denied* 366 U.S. 974, 81 S.Ct. 1940, 6 L.Ed.2d 1262 (1961). For the reasons expressed above we also conclude that there was sufficient

evidence of appellant's violation of Art. 2B § 207(a)(2) of Md.Code, *supra.*

## The Supplementary Jury Instructions

In the course of their deliberations the members of the jury sought advice from the trial judge with regard to the charge that appellant had violated Art. 2B, § 207(a)(2). The notes requesting such assistance stated:

We need further instruction on the fourth count.

The matter we wish to discuss relates to count four. Our question centers on the conjunction "and". What we would like to know in the Court's opinion, does the first part of the count have to be the cause of the second part.

■ The trial court, after discussing the jury's question with counsel concluded:

Here, the particular section says, "A person may not be intoxicated or drink any alcoholic beverage in a public place and cause a public disturbance." There are two elements. The first element is in the alternative. It can be one or the other. But there must be the second element that coexists with one or the other of the first elements, and that is all, and that is what the legislation says.

If the Legislature intended otherwise, it would be charged with the responsibility for saying so and it would be very simple to say so, and they have said so frequently in other contexts. For instance, be intoxicated or drink any alcoholic beverage in a public place which thereby poses a public disturbance.

Any words would show the causal relationship and a necessary causal nexus between the first and the second. It did not so state, and the only way, in my view, that it can be interpreted is that they are distinct elements which must coexist but which have no cause and effect between themselves, necessarily linking them.

If it was intended otherwise it would have so provided, and it could have so provided. This is the way they

provided, when they did not intend that there be that causal distinction.

We agree with this construction of the statute by the trial court since the statute's words are given their ordinary and natural import—not forced so as to limit their application. *Blake v. State, supra.*

The trial court in accordance with defense counsel's request agreed to emphasize to the jury that in this area of determining the proper interpretation of a statute where there is a substantive dispute that its supplementary instruction in answer to the jury's question would be advisory only and that the jury, not the judge, was the judge of the proper interpretation to be afforded the statute.

The trial court proceeded to answer the jury's question dwelling at some length on Maryland's unique view that with respect to disputes over the substantive law of the crime in the trial of a criminal case that the jury, not the judge, is charged with resolving the dispute. Judge McAuliffe then continued:

In short, the instruction which I now will give you is advisory. The fourth count, the one about which you are concerned, is Article 2B, Section 207 of the Annotated Code of Maryland....

... (2) reads, "A person may not be intoxicated or drink any alcoholic beverage in a public place and cause a public disturbance." The Court's advisory opinion to you is that the first part of that is in the alternative, being intoxicated or drink any alcoholic beverage in a public place, and that alternative is easy enough for us to understand.

Then there is an "and," the coordinate conjunction "and," and after that, "cause a public disturbance." The advisory instruction to you is that as that appears there are two elements, the first of which is in the alternative and can be satisfied by having either of those two, the second of which is, "and cause a public disturbance," the two elements, the first being met by a finding that either

of those exist, and the second element, when they coexist together, which is what the coordinate conjunction "and" means. There is the two elements and the violation of the statute.

If the Legislature intended to put a causal connection therein, it would be easy enough to do so. For instance, be intoxicated or drink any alcoholic beverage in a public place which thereby causes a public disturbance. So that, if that was what was intended, those who are charged with the responsibility of telling us precisely and particularly, very precisely in the criminal law what is intended, would have it available to them in our English language, the ready means to do so.

What they have told us is that there are two coexisting elements, the two elements which must coexist. When they do, they have said that is a violation of the statute. They have not connected them up in a cause and effect relationship. They could very easily have done so if they had intended to do so, and there are—*I have served in both the House of Delegates and the State Senate.* There are professional draftsmen there whose responsibility alone is to make certain that statutes of this type spell out precisely and exactly and with coordinate conjunctions or the precise use of the English language exactly what is intended, and they are for the most part law students and lawyers who are trained in the precise wording of the language and in draftsmanship.

The final word on this subject is not mine, and I have made that clear to you. Our law says and intends, and we would have changed it if it wasn't intended that way. Our law intends that when you sit there, that in this area you have final say. You are entitled to an advisory instruction, and you have requested one and I have given it to you. But the final say rests in this State with you.

■ The appellant also complains that by mentioning his service as a member of the legislature, above emphasized,

the trial judge undermined the advisory nature of his charge. We disagree. Reading the charge as a whole, the jury was properly instructed as to its role as judge of the law in response to its question. *Montgomery v. State,* 292 Md. 84, 437 A.2d 654 (1981); *Stevenson v. State,* 289 Md. 167, 423 A.2d 558 (1980); *Guardino v. State,* 50 Md.App. 695, 440 A.2d 1101 (1982).

### Admission of Evidence of Appellant's Conduct at Police Station

■ Over the appellant's objection, Officer Ronald J. Gaddis of the Montgomery County Police Department was permitted to testify to the appellant's assaultive and abusive conduct at the Germantown Police Station where he was taken from the scene of the arrest. We think the evidence was admissible on either of two grounds. The appellant's conduct at Germantown Police Station was part of a continuing event and was relevant to all four charges on which he was being prosecuted. The fact that in continuing his outrageous conduct, which began at the scene of his arrest, into the police station where he was taken following his arrest, the appellant was guilty of other crimes, is admissible as an exception to the general "other crimes" evidence rule. *Tichnell v. State,* 287 Md. 695, 415 A.2d 830 (1980). Secondly, the appellant's conduct at the Germantown Police Station corroborated the testimony of Officers Troutner, Abramowitz, Shortall and Godbold as to his earlier conduct and credibility of those officers' testimony was very much in issue before the jury. Finally, Officer Abramowitz later at the trial testified to the same conduct of the appellant without objection and, therefore, the admission of Officer Gaddis' testimony was not prejudicial to the appellant's defense. *Peisner v. State,* 236 Md. 137, 202 A.2d 585 (1964).

JUDGMENTS AFFIRMED; COSTS TO BE PAID BY THE APPELLANT.