RALPH EARL LAMOT AND ROBERT SPENCER
HAGER *v.* STATE OF MARYLAND

[No. 316, Initial Term, 1967.]

*Decided November 10, 1967.*

The cause was argued before Murphy, C. J., and Anderson, Morton, Orth, and Thompson, JJ.

*William H. Meserole, Jr.,* with whom was *Joseph A. DePaul* on the brief, for appellants.

*Anthony M. Carey, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Arthur A. Marshall, Jr., State's Attorney for Prince George's County,* and *Edward P. Camus, Assistant State's Attorney for Prince George's County,* on the brief, for appellee.

Anderson, J., delivered the opinion of the Court.

380

The appellants, Ralph Earl Lamot and Robert Spencer Hager, were convicted by a jury, Judge Ernest A. Loveless presiding, in the Circuit Court for Prince George's County, of the crimes of storehouse breaking and larceny and were sentenced to a term of eight years in the Maryland Penitentiary on each count, the sentences to run concurrently.

At approximately 2:30 a.m. on November 8, 1964, Richard C. Grimes and his fiancee, Jane Berry, were parked in a shopping center on Riverdale Road awaiting help to repair a flat tire. They heard glass breaking behind them, and, turning, observed two men at a distance of several hundred feet breaking out the glass door of the McIntire Hardware Store which was located in the shopping center. They further observed a 1955 or 1956 turquoise and white Chrysler product automobile parked in front of the store and pointing in the direction of Riverdale Road. Grimes immediately went to a phone booth and called the police, informing them that he had seen two white men breaking in the door of the McIntire Hardware Store and that a 1955 or 1956 turquoise and white Chrysler automobile was parked just outside of the store. On his return to his automobile he noticed that the two men, previously seen breaking the glass door, were placing objects in the trunk of the automobile parked in front of the store. Within a few minutes the automobile containing the two men left the scene.

The testimony discloses that a call went out immediately over the police radio to all cars in the vicinity describing the breaking of the hardware store and to be on the lookout for a 1955 or 1956 turquoise and white Chrysler automobile driven and occupied by two white males. At 2:35 a.m., Corporal Albert H. Frank, then on patrol duty, received the radio lookout, and in approximately the 6500 block of Kenilworth Avenue, he observed a car meeting the description of that sent out over the police radio. Since he was driving in the opposite direction, he made a U-turn in pursuit of the vehicle and stopped the vehicle approximately three blocks away at 55 Place and Madison Street in East Riverdale. He asked the driver for his license and registration and at this time observed a group of power tools on the rear seat as well as a large level straddled between the seats.

Meanwhile, Officers Mumaw and Wolfe, who had also re-

ceived the call, stopped at McIntire Hardware Store where they observed that the front door of the store had been broken and that empty boxes marked as portable radio containers were scattered about the floor of the store. They immediately picked up the witness Grimes and in a few moments arrived at the scene where the Chrysler automobile had been stopped by Officer Frank. The witness Grimes identified the vehicle as the automobile he had seen parked in front of the McIntire Hardware Store. Officer Mumaw then asked the driver, later identified as Lamot, to open the trunk of the automobile. Lamot, according to the testimony of the officers and Grimes, thereupon opened the trunk, which was unlocked. Mumaw testified that inside the trunk he found power tools that had the label of McIntire Hardware Store upon them as well as transistor radios similarly marked.

The testimony further discloses that Sergeant Wheeler of the Prince George's County Detective Bureau had also received the call and in response had gone to the McIntire Hardware Store where he observed the broken door, the empty boxes scattered upon the floor and a shelf area for power tools where there were a number of empty spots on the shelf. Wheeler then proceeded to the detained automobile and after observing the tools contained in the open trunk advised the appellants that they were under arrest for storehouse breaking. Wheeler then ordered the automobile towed to the Seat Pleasant Police Station where, in his presence and that of Officer Frank, photographs were taken. These photographs were admitted in evidence at the trial as State's Exhibits 2-A through 2-D, and were identified by Frank as photographs which accurately depicted the vehicle he stopped at 55th Place and Madison Street on the morning in question and showed in Exhibits 2-B and 2-C the power tools in the trunk of the car which he observed at that time and place. Exhibit 2-D was identified as the photograph of the rear seat of the automobile depicting the articles contained therein at the time of the arrest.

Officer Frank further testified that he inventoried the goods taken from the trunk which consisted of three transistor radios, seven power saws, a number of blade saws, a sander, a saw kit, and one aluminum level. He stated that he inventoried only the

tools that were new, since Lamot informed him he was a carpenter and had tools in his vehicle. He testified that all of the inventoried items contained a small sticker upon which was written "McIntire Hardware." The inventory was also admitted in evidence at the trial.

The manager of the hardware store, John J. Jacobik, testified that on the morning of the arrest, upon arriving at the store, he observed that a number of power tools were missing. He further testified that the retail value of the stolen goods was about $435. The goods inventoried by Officer Frank had been released by the police to Jacobik, pursuant to a court order, after an earlier trial on January 13, 1965, for the same offenses involving the two appellants.

Upon this statement of facts, appellants advance as their first reason why their conviction should be reversed, that the trial court erred in holding that the best evidence rule did not apply to photographs of appellant Lamot's automobile, introduced into evidence as State's Exhibits 2-A, 2-B, 2-C and 2-D, showing the goods found in the trunk and on the rear seat of the automobile.

Appellants argue that the best evidence rule required the State to introduce into evidence the actual articles found in the trunk and back seat of appellant Lamot's automobile at the time of the arrest rather than photographs of such articles. Objection is not made to the accuracy of the photographs, but because, in appellants' view, it was not possible for the witnesses to distinguish the articles allegedly stolen from those already owned by the appellants, and by returning the articles allegedly stolen to the owner, the State deprived the court, the jury and the defense of all means of determining the extent of, the condition of, value of, and identification of the various articles which the jury should have been allowed to consider in arriving at its verdict. Appellants further argue that since Lamot was a carpenter and had in his possession in the car power tools and other articles of carpenter's equipment, it would be difficult to distinguish these from those allegedly stolen through use of the photographs.

We find these contentions without merit. The best evidence rule has never been held to apply to the introduction of chattels

or material objects, but has been restricted to writings or other documentary evidence. In *General Builders v. MacArthur,* 228 Md. 320, 179 A. 2d 868 (1962), cited by both appellants and State, at page 327, the Court said:

> "It is true that, in a broad sense, the best evidence rule embraces every fact or issue that may be in controversy, but in modern practice the rule is ordinarily invoked where there is an attempt to substitute oral for documentary evidence or where proof is to be made of some fact of which there is a record in writing. 20 Am. Jur., Evidence § 405."

Generally, questions relating to the admissibility of photographs are left largely to the discretion of the trial court. *Nocar v. Greenberg,* 210 Md. 506, 124 A. 2d 757 (1956). In any case there was ample evidence of guilt in addition to the photographs, including the oral testimony of Officer Frank and Detective Sergeant Wheeler. Officer Frank testified on the stand as to his inventory of the goods taken from the automobile after the arrest and that he only inventoried the new articles, all of which bore the label of McIntire Hardware. Failure to introduce the actual articles did not prejudice the appellants in either respect. In unrebutted testimony, the store manager Jacobik valued the goods at retail at "about $435." Jacobik had ample opportunity to form an opinion since as store manager he regained possession of the goods after appellants' first trial. One familiar with the value of property is competent to testify on this question. *Casualty Ins. Co. v. Messenger,* 181 Md. 295, 29 A. 2d 653 (1943).

Appellants next contend that the evidence as shown in State's Exhibits 2-A through 2-D were the fruits of an unlawful search and seizure.

It has long been the rule in this State that a police officer may arrest without a warrant where he has reasonable grounds to believe at the time of the arrest that a felony has been committed and that the person being arrested has committed the felony. Probable cause exists where the facts and circumstances within the officers' knowledge and of which they had reasonably trustworthy information to warrant a man of reasonable

caution in the belief that an offense has been committed. *Mulcahy v. State,* 221 Md. 413, 158 A. 2d 80 (1960); *Jones v. State,* 242 Md. 95, 218 A. 2d 7 (1966). Here, as a result of the lookout, the vehicle occupied by appellants was stopped by Officer Frank since the vehicle matched the broadcast description. He asked the driver to produce his license and registration card. At this time he observed the power tools and level on the back seat. Almost immediately thereafter the police officers, including Officers Mumaw and Wolfe who had also heard the "lookout" broadcast, accompanied by the witness Grimes, arrived on the scene. Upon arrival, Mumaw asked appellant Lamot to open the trunk. Lamot complied by opening the trunk and the officers observed the power tools and the transitor radios inside with McIntire's label thereon. About this time Sergeant Wheeler, who had also been to McIntire Hardware Store, arrived on the scene and, according to his testimony, placed the appellants under arrest. The Chrysler automobile, occupied by the appellants, had been identified by the witness Grimes upon his arrival as the vehicle he had seen parked in front of the hardware store when the glass door was broken out. While there is some confusion as to when the actual arrest was made, it is apparent that it was not made until Officers Mumaw and Wolfe arrived with the witness Grimes and the trunk had been voluntarily opened by Lamot. Here, we have an excellent example of the police working as a team. If the police officers, working as a team, had accumulated sufficient information to furnish probable cause for a reasonable man to believe that the alleged crime had been committed and that there was probable cause to believe that the appellants were involved therein, there was sufficient cause for their arrest. *Farrow v. State,* 233 Md. 526, 532, 197 A. 2d 434 (1964). Here, there can be little argument that the police, working as a team, had reasonable cause to believe that a felony had been committed and that appellants had committed the felony.[1] We find the arrest to be legal. As the arrest was lawful, the evidence as to the articles found in the trunk and on the back seat of the vehicle, result-

---

1. The felony being grand larceny (storehouse breaking being only a misdemeanor at the time of the commission of the crime in question).

ing from the search, was clearly admissible. *Mulcahy v. State, supra; Jones v. State, supra; Johnson v. State,* 238 Md. 528, 209 A. 2d 765 (1965).

Appellants' final contention is that the court committed reversible error when it denied appellants' motion to suppress the evidence on the basis of the doctrine laid down in *Miranda v. Arizona,* 384 U. S. 436 (1966). Appellants contend that at the time of their arrest they were not given the various warnings of procedural rights set forth in *Miranda v. Arizona, supra. Miranda,* however, has no application to the instant case. The *Miranda* decision prohibited the use in evidence of oral or written statements stemming from custodial interrogation where the defendant had not been warned of his constitutional rights. No oral or written statements of the appellants were introduced in the trial below nor was there any reliance upon oral or written statements to obtain the evidence which was used against the appellants. The evidence of which the appellants speak is the collection of articles found in appellant Lamot's automobile. Appellant Lamot when asked to open the trunk of his automobile voluntarily complied. See *State v. Forney,* 181 Neb. 757, 150 N. W. 2d 915 (1967), where it was held that the United State Supreme Court had not applied the *Miranda* test to searches and seizures.

*Judgments affirmed.*