# ERNEST J. HALCOMB *v.* STATE OF MARYLAND

[No. 88, September Term, 1968.]

34

*Decided February 10, 1969.*

*Weldon L. Maddox* for appellant.

*Thomas N. Biddison, Jr., Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Charles E. Moylan, Jr., State's Attorney for Baltimore City,* and *Joseph R. Raymond, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

MURPHY, C.J., delivered the opinion of the Court.

Appellant was found guilty by a jury in the Criminal Court of Baltimore under two separate indictments charging (1) rob-

bing Officer James Custis of his police revolver and espantoon on May 2, 1964, and (2) assault with intent to murder Officer Custis on the same day. He was sentenced to fifteen years imprisonment on the count charging assault with intent to murder and ten years, consecutive, on the robbery charge. He contends on this appeal that the trial judge committed a number of prejudicial errors at the trial, principally in his failure to properly instruct the jury and in his rulings on the admissibility of evidence.

There was evidence adduced at the trial from which the jury could find that on May 2, 1964 at approximately 4:15 a.m., Officer James Custis, while walking his beat, observed three men emerge from an alley. Suspicious of their actions, Custis confronted the three men, one of whom was the appellant, the others being Burl Bradburn and John Gipe. The officer observed during the confrontation that the men had a metal stand with them. As there had been a number of burglaries in the neighborhood, Custis thought that the stand may have been a television or table stand that had been taken in a burglary. The officer asked the men to identify themselves, but they refused, although Gipe did tell the officer that he lived in the neighborhood and that the stand belonged to him. At this point, the men started to break away from Custis and he grabbed appellant and Gipe with the intention of placing them under 'arrest. He was then struck from behind, knocked to the ground, beaten and kicked repeatedly by the three men, and struck with his own espantoon. While on the ground, the officer tried to get his gun from its holster. He heard one of the men say "He's going for his gun," to which one of the other men said "That's all right, I got it." The officer was then shot in the face with his own revolver. He was unable to identify which of the three men shot him, but an eyewitness to the crime, the wife of Burl Bradburn (who observed the encounter from the window of her home) testified that it was appellant who shot Custis.

Custis was removed to the hospital where, on the following day, he identified appellant as one of his assailants from among a number of photographs shown to him by the police. A six-man lineup was conducted at the hospital and Custis identified appellant, Bradburn, and Gipe as his assailants.

The evidence showed that Officer Custis's espantoon was recovered shortly after the crime in a gutter about a block from the point of the encounter. On information received from appellant's mother, the police recovered Custis's revolver from a sewer on May 4, 1964, the sewer being located in the general area of the crime.

I

While appellant did not testify, and offered no evidence on his own behalf, he filed thirty-four written requests with the court for jury instructions, a number of which related to the elements necessary to establish the crime of robbery. Appellant particularly requested an advisory instruction to the effect that to convict him of robbery, the jury must find from the evidence that at the time he took and carried away the officer's revolver and nightstick, he had a specific intent to deprive him of these items permanently; that if the officer's nightstick and gun were taken for a purpose other than to steal, or were taken solely to disarm the officer or to prevent him from striking or shooting the defendant and his companions, but without an intention to steal the equipment at the time it was taken, the jury should find the defendant not guilty of robbery; and that in determining whether the defendant had the requisite intent to steal, the jury could consider the evidence that the revolver and espantoon were discarded.

The court declined to grant the substance of the requested instructions, limiting its advisory instructions to the jury on the robbery offense to the following:

"* * * [T]he State charges that the defendant feloniously did rob or steal from Officer Custis his revolver and nightstick. Now, the robbery is the taking of property from a person by means of actual or implied force. Therefore, in order to find the defendant guilty under this count, you must find three things. First, that force or violence was used by the defendant upon Officer Custis. Secondly, you must find that his revolver and nightstick were taken, and thirdly, you must find that at the time he had the intention to deprive Officer Custis of these items. I might add at this time

that this does not mean the State must prove an admission on the part of the defendant of an intent to rob. It can be proved by circumstances in the case. The use of a dangerous and deadly weapon, the severity of the beating, the violence used, all of these are circumstances from which intent can be inferred either by the Court or Jury."

The appellant specifically excepted to the lower court's refusal to grant the gist of his requested instructions, as above outlined, and contends on this appeal that the failure of the court below so to instruct the jury constituted reversible error. We agree.

Robbery is larceny from the person accompanied by violence or putting in fear, *Harrison v. State,* 3 Md. App. 148, and as every robbery embraces a larceny, *Veney v. State,* 227 Md. 608, 612, a larcenous intent is an essential ingredient of robbery, *Midgett v. State,* 216 Md. 26, 41. As defined in *Hadder v. State,* 238 Md. 341, 354, a case involving a charge of armed robbery, a larcenous intent means "that the robber must intend to steal the property taken, *i.e.,* permanently to deprive the owner (or the lawful possessor) of his property," the court there emphasizing at page 355 that "the crucial element of larcenous intent is an intent permanently to deprive the owner of his property." To the same general effect, see *Johnson v. State,* 237 Md. 283; *Fletcher v. State,* 231 Md. 190; *Putinski v. State,* 223 Md. 1; *Sizemore v. State,* 5 Md. App. 507; *Anderson v. State,* 3 Md. App. 85; *Gopshes v. State,* 1 Md. App. 396. It is thus clear that as all of the elements that are necessary to constitute the crime of larceny are also necessary to constitute robbery, the taking and carrying away must be with felonious intent, *viz.,* with a fraudulent intent to deprive the owner permanently of his property at the time it was taken. See Clark and Marshall, *Crimes,* Sections 12.09, 12.10; *Perkins on Criminal Law,* page 224.

In *Midgett,* the appellant was charged with robbing a police officer of his service revolver, belt, holster and flashlight. The evidence showed that the officer was abducted by the defendant and his confederates at which time they took the police

equipment in question from him; that the holster and belt were almost immediately thereafter discarded; and that the officer's gun was hidden by the defendant in the woods, but later recovered and returned to the authorities. One of the questions before the court was whether there was evidence from which the trier of fact could rationally conclude that the defendant intended to steal the officer's property at the time he took it. While noting that larcenous intent may be ascertained and determined from the words, acts, and conduct of the accused, and that such intent is peculiarly a jury issue, the court made it crystal clear at page 45 that upon such evidence as there existed a specific instruction should be given to the jury to the effect that "if it finds that the defendant, by taking and carrying away the equipment of the officer, intended to steal it, then the verdict should be 'guilty,' but if it finds that he merely intended to disarm the officer, without an intent to steal his equipment at the time it was taken and carried away, then the verdict should be 'not guilty.' "

It is, of course, incumbent upon the court when requested in a criminal case to give an advisory instruction on every essential point of law supported by the evidence. *Gordon v. State*, 5 Md. App. 102; *Malloy v. State*, 4 Md. App. 420; *Huber v. State*, 2 Md. App. 245; *Tipton v. State*, 1 Md. App. 556. Under the circumstances of this case, we think it evident that the lower court erred when it advised the jury in sum and substance that it could find the requisite intent to rob if it concluded that at the time the officer's gun and nightstick were taken, the appellant "had the intention to deprive Officer Custis of these items." Such an instruction on the key element of intent was not only too limited under the circumstances but it wholly failed to take into account the theory of appellant's defense to the robbery charge, as reflected by his requests for instructions — namely, that at the time the officer's revolver and espantoon were taken, there was no intention to steal either of them in the sense of an intention to permanently deprive him of his property in these items, but on the contrary, the intent was to deprive him only temporarily of his custody or use of this property. In light of the circumstances under which the officer's gun and nightstick were taken from him, as shown by the evidence, together

with the nature of these items, and the fact that they were subsequently abandoned at or near the scene of the crime, we think there was a sufficient evidentiary basis upon which the jury could have concluded, had it been properly instructed, that there was not the requisite larcenous intent involved in the taking.

That such an instruction as was requested by appellant was proper and should have been granted does not mean that there was no evidence in the case from which the jury could have properly concluded that a larcenous intent did in fact exist. *Cf. Bradburn and Gipe v. State,* 4 Md. App. 248. Nor would it mean that no larcenous intent could be found because the items taken were subsequently discarded or abandoned. See *Johnson v. State, supra; Midgett v. State, supra; Sizemore v. State, supra.* It only means that there was evidence in the case from which the jury could find that at the time these items were taken from Officer Custis, the appellant did not have the requisite larcenous intent to permanently deprive the officer of his property. The function of a jury instruction being, among other things, to declare what rules of law will apply to any set of facts which may be found from the evidence (Wharton's *Criminal Law and Procedure,* Anderson Edition, Section 2090), we hold that as there was evidence to support the requested instruction, and as it was material to appellant's defense and correctly stated the applicable law, it constituted reversible error under the circumstances of this case to omit the substance of it from the court's charge to the jury. See *Bennett v. State,* 230 Md. 562; *Bruce v. State,* 218 Md. 87. See also Maryland Rule 756 b.

## II

With reference to the charge of assault with intent to murder, appellant requested that the jury be instructed that the actions of Officer Custis in stopping and apprehending him constituted an arrest; that the arrest was illegal, unless the jury found that a misdemeanor or felony was being committed in the officer's presence or view, or that the officer had reasonable grounds to believe that the appellant had committed a felony; that if the jury found the arrest to be illegal, then the appellant was authorized to use any reasonable means to effect his escape even to the extent of using force as was reasonably necessary; that

if the defendant was using only such force as was reasonably necessary to effect his escape, he could not be guilty of an assault; that to find defendant guilty of assault with intent to murder, the jury must find that if death had taken place, the killing would have been murder; that if the jury found that the killing would have been manslaughter, it could not find appellant guilty of assault with intent to murder; that voluntary manslaughter is an intentional homicide committed in sudden passion or heat of blood caused by reasonable provocation and not with malice aforethought; that in voluntary manslaughter the provocation must be such as to reasonably excite passion in an ordinary man and cause him to act rashly and without reflection; and that if the jury found that Custis was attempting to unlawfully arrest appellant, and that the shooting was a result of passion or sudden heat agitated by the provocation of the illegal arrest, only manslaughter could have resulted if the officer had been killed.

The court limited its instructions relative to the assault with intent to murder charge to the following:

> "In judging the innocence or guilt of the defendant * * * [of assault with intent to murder] you must find two things. First you must find that there was an assault upon Officer Custis and secondly you must find that there was an intent upon the defendant to murder Officer Custis. In order to find the defendant guilty of this charge, you must find that if death had taken place, the killing would have been murder, and murder is defined as the unlawful or felonious killing of a human being with malice aforethought. Malice aforethought has been defined as the intent to take the life of another without legal justification or excuse. The Court of Appeals has ruled that the deliberate selection and use of a deadly weapon directed at a vital part of the body is a circumstance which indicates a design to kill.

> "In our own Maryland statute all murder which shall be committed in the perpetration of or intent to perpetrate any robbery shall be murder in the first de-

gree. * * * Intent to murder can be found by circumstantial evidence rather than express intent on the part of the defendant to kill and murder Officer Custis. The general rule is if an assault was of such nature that the victim could have died from the wounds or injuries received or that a deadly weapon was directed to a vital part of the body then any of these two circumstances is evidence of an assault with intent to murder."

Appellant specifically excepted to the court's failure to grant the substance of his requested instructions, and also objected to that part of the court's instructions which referred to the felony murder statute [1] in a manner indicating that regardless of the existence of an intent to murder, appellant could be found guilty of the crime of assault with intent to murder if the jury found that the assault occurred in the perpetration of a robbery or attempted robbery.

The common law rule adhered to in Maryland is that a person illegally arrested by a police officer may use any reasonable means to effect his escape to the extent of using such force as is reasonably necessary under the circumstances. *Jenkins v. State,* 232 Md. 529; *Williams v. State,* 204 Md. 55; *Sugarman v. State,* 173 Md. 52; *Jones v. State,* 4 Md. App. 616. Where excessive force is used to resist an unlawful arrest, the party resisting may, himself, be charged with an unlawful assault, *Sharpe v. State,* 231 Md. 401, *Kellum v. State,* 223 Md. 80, and, as stated in *Davis v. State,* 204 Md. 44, 53, if "more than reasonable force is used and death results under circumstances which otherwise would be murder, the grade of homicide is, say some courts, and may be, say other courts, reduced to manslaughter, because the killing was in resistance to an illegal arrest." To like effect, see 40 Am. Jur. 2d, *Homicide,* Sections 103-104; Clark and Marshall, *Crimes,* Sections 7.03, 10.08, 10.11, 10.19; *Perkins on Criminal Law,* pages 51, 673; Whar-

[1]. Maryland Code, Article 27, Section 410 provides that "all murder which shall be committed in the perpetration of, or attempt to perpetrate any * * * robbery, * * * shall be murder in the first degree."

ton's *Criminal Law and Procedure* (Anderson Edition) Sections 216, 1628.

The *Davis* case involved, as here,. a charge of assault with intent to murder growing out of the shooting of a police officer by the defendant under circumstances tending to indicate that the officer was unlawfully attempting to arrest the defendant. The Court of Appeals there rejected the rule applicable in some states that once the illegality of the arrest is established, the degree of homicide could not be greater than manslaughter, unless express malice is proved. Instead, the court adopted the rule that the accused must in fact have been filled with passion aroused by the illegal arrest sufficient to meet the usual provocation tests, if murder is to be reduced to manslaughter. Upon this state of the law, the *Davis* court held that it was error for the trial judge to refuse a requested instruction that to find a verdict of guilty of assault with intent to murder, the circumstances must be such that if death had resulted, the homicide would have been murder; and that an assault is not with intent to murder if the actual killing would be manslaughter only. The court found that the arrest of the defendant by the police officer was unlawful and, accordingly, at page 54 concluded:

"* * * the appellant was entitled to have the jury decide whether the shooting was a result of passion or sudden heat agitated in him by the provocation of the illegal arrest, or whether it was with malice; if the former, there would be no intent to murder; if the latter, such intent could follow the inference of malice."

We think the instructions given by the court to the jury in no way covered appellant's theory of defense to the charge of assault with intent to murder, as set forth in his requests for instructions, and that under *Davis* the court's failure so to instruct constitutes reversible error. It is clear that under the circumstances presented by this case, the legality of the arrest was properly a jury question, and that in addition to a proper instruction to cover the lawfulness of the arrest (as requested by appellant) the court should also have instructed under *Davis* that if the jury found the arrest to be unlawful, then it was to consider whether the shooting was a result of passion or sudden

heat agitated in the appellant by the provocation of the illegal arrest; and that should the jury find in the affirmative on this question, the appellant would not be guilty of assault with intent to murder. That such an instruction was proper under *Davis,* does not mean that if the jury found the arrest to be illegal, it could not, on the evidence before it, find that there was not adequate provocation and there had been used entirely unnecessary and excessive force sufficient to show malice and an intent to murder. See *Bradburn and Gipe v. State, supra.* But as the instructions requested by appellant, as herein delineated, were essential to his defense, and there was evidence to support the theory thereof, it was error not to include the substance of them in the court's charge to the jury.

In view of our conclusion, we need not determine whether the court also erred in instructing the jury, as it apparently intended to do, that it could consider the felony murder statute in determining whether, had the officer been killed in the robbery, the appellant would be guilty of assault with intent to murder, regardless of his actual intent. We note, however, that the cases uniformly hold that the essence of the offense of assault with intent to murder is intent, so that if the intent is carried out, the resulting crime would be either first or second degree murder, had the victim died. See *Veney v. State,* 251 Md. 159; *Tate v. State,* 236 Md. 312; *Marks v. State,* 230 Md. 108; *Davis v. State, supra; Webb v. State,* 201 Md. 158; *McFadden v. State,* 2 Md. App. 725; *Hutchinson v. State,* 1 Md. App. 362. And it has been held that the requisite intent cannot be inferred from the mere fact of the assault, or established as a matter of law from the mere use of a deadly weapon. *Davis v. State, supra; Webb v. State, supra.* It might be concluded from these cases that the intent involved in the crime of assault with intent to murder can never be implied as a matter of law, but must always be proved as a matter of fact; and we think this to be the correct general rule. In so concluding, we are not unmindful of the flat holding in *Stansbury v. State,* 218 Md. 255, that at common law, a killing in the perpetration of a robbery was murder, regardless of intention, and that the felony murder statute leaves the common law sense unimpaired, merely graduating the measure of punishment according to the circum-

stances under which the crime was committed. But we think the rationale of *Stansbury* is limited to cases involving a felonious homicide actually occurring in the course of a robbery, and is not directly applicable to cases involving a charge of assault with intent to murder allegedly committed in the perpetration or attempt to perpetrate a robbery. Both in *Davis* and *Webb* the court held without equivocation that to support a charge of assault with intent to murder, there must be proven not only the assault but also the intent to murder. It is, of course, apparent that an inference of malice may be drawn from the fact of the robbery itself, *Veney v. State, supra,* (the implied threat to kill), so that where the victim is shot in the course of the crime the intent to murder is readily inferable from the circumstances. Of course, a specific intent to murder is not necessary to sustain a conviction, it being sufficient if there was an intention to commit grievous bodily harm. *Harding v. State,* 5 Md. App. 230; *Morgan v. State,* 4 Md. App. 351; *Lawrence v. State,* 2 Md. App. 736.

As a new trial will be necessary in this case, it is unnecessary that we consider other of the appellant's numerous contentions, with these exceptions. Our review of the record leads us to conclude that appellant has not been denied his constitutional right to a speedy trial, and that the strictures outlined in *United States v. Wade,* 388 U. S. 218, are not applicable to appellant's case since the lineup occurred prior to the effective date of that decision. We also see no error under the circumstances of this case in permitting the jury to consider both the robbery and assault with intent to murder charges as separate and distinct offenses. See *Cottrell v. State,* 1 Md. App. 520.

*Judgments reversed. Case remanded for a new trial.*