WILLIAM HERMAN WELLS *v.* STATE OF MARYLAND

[No. 122, September Term, 1969.]

*Decided January 27, 1970.*

512

The cause was submitted to MURPHY, C.J., and ANDERSON, MORTON, ORTH, and THOMPSON, JJ.

*Stanley S. Cohen* for appellant.

*T. Joseph Touhey, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Charles E. Moylan, Jr., State's Attorney for Baltimore City,* and *Joseph Harlan, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

ANDERSON, J., delivered the opinion of the Court.

Appellant, William Herman Wells, was tried on February 28, 1969 in the Criminal Court of Baltimore in a non-jury trial by Judge George D. Solter for shoplifting and assault with intent to murder. Judge Solter found him guilty on both charges and sentenced appellant to eighteen months and ten years, respectively, the terms running consecutively. Appellant presents six questions for the consideration of the Court. They are:

1. Did the State fail to establish legally sufficient evidence of the ownership of the items alleged to have been stolen?
2. Did the court err in permitting the State to introduce secondary evidence without requiring an explanation of the absence of the original evidence?
3. Was the appellant illegally arrested and searched?

4. Was there insufficient evidence to show directly or to permit a reasonable inference of an intent to murder?
5. Was the appellant unconstitutionally denied a paraffin test?
6. Was there insufficient untainted evidence of identification of the appellant?

The testimony adduced at trial presented the following facts: On November 13, 1968, a female clerk of the W. T. Grant Company store, located in the Frankford Shopping Plaza in Baltimore, observed appellant and another man leaving the store. Her attention was called to the two men by a bulge under appellant's coat, which she described as being a black leather three-quarter length car coat. As the men left the store, she sounded an alarm to which four male employees responded. The men left the store in pursuit of the two men. Mr. Wolfe, a store employee, was the first to cover the block long distance of the shopping center and at the rear of the shopping center he observed one of the men reaching into a trash can. He approached them and discovered a portable radio with a Bradford label specifically used by W. T. Grant Company in the trash can. He later found a phonograph with an Electra label, also used by W. T. Grant Company, in an adjacent trash can. The other three employees arrived and the appellant and his companion fled. As they ran, the appellant's companion yelled, "Run, run" and "Pull the gun, pull the gun." As the store employees gave chase, appellant yelled, "Stop", turned as he ran and fired the gun once at Warren Moore, who was the closest of his pursuers at the time. The two men escaped and the police were called. Officer Dunn, upon his arrival, was told what had taken place and received a description of the suspects from the employees. He went into the woods adjacent to the shopping center where he was told the men had fled and observed footprints in the mud leading towards Pulaski Highway. On arriving at the highway, he observed appellant, who matched the description given

him, wet with mud on his shoes, and placed appellant under arrest.

### I

Appellant first contends that the evidence as to the ownership of the stolen items was insufficient to sustain the conviction. Specifically, the objection is that the State in the indictment alleged ownership in the W. T. Grant Company, Incorporated (in fact the indictment read W. T. Grant Company, a corporation), while at trial reference was made only to the W. T. Grant Company and no evidence was produced that the W. T. Grant Company was in fact a corporation.

"It is fundamental, . . . . , that in a prosecution for larceny one of the essential elements to be proved is the ownership of the stolen property; and, when ownership is claimed to be in a corporation, the claim must be supported by evidence. *Richardson v. State,* 221 Md. 85 at 88." 156 A. 2d 436 at 438. The rationale of the rule is that "The accused is entitled to be informed of the exact accusation against him and to have the proof substantiate that accusation beyond reasonable doubt." *Sippio v. State,* 227 Md. 449 at 451, 177 A. 2d 261 at 262. The Court of Appeals in *Richardson v. State, supra,* stated at page 89, 156 A. 2d 438:

> "[T]he most satisfactory proof of corporate entity is the production of the articles of incorporation of a company, duly and properly authenticated, coupled with additional proof that the company is engaged in conducting business under its corporate name. But in a criminal prosecution, it is generally held that such formal proof is not required. (citing authority) It has frequently been held that in certain types of cases, corporate existence may be proved orally and by general reputation."

The cases decided since *Richardson, supra,* have followed the general rule of permitting proof of corporate

existence by references thereto during trial. In making the determination as to sufficiency of proof of corporate existence, the Court of Appeals, and this Court, have followed closely the language of Md. Code, Article 23, Section 5 (a) (1) which provides:

> "Sec. 5 Corporate name.
>
> (a) *Indication of a corporation; not to conflict with charter as to purpose; infringement on name of other corporation.*—The name of the corporation—
>
> (1) Shall be such as to indicate that it is a corporation. This provision shall be deemed to be complied with if the name contains the word "corporation," "incorporated" or "limited"; or ends with an abbreviation of one of such words; *or ends with the word "company,"* (emphasis supplied) if such word is not immediately preceded by the word "and" or any symbol therefor."

In *Richardson v. State, supra,* the indictment alleged that Horn Motor Express was a corporation. At trial one witness referred to it as "Horn's Motor Express, Inc.," and another to it as "Horn's Motor Express Company." The Court found the indictment had been sufficiently proven and stated: "The fact that Horn's Motor Express, Inc., ended with the abbreviation 'Inc.' coupled with the many occasions in the testimony where it was referred to, by appellant's counsel and others, as Horn's Motor Express *Company* (emphasis supplied) and the further fact that, during the entire trial, there was not the slightest intimation that Horn's Motor Express, Inc., was not a corporation, permitted and justified the inference that the company was incorporated." 221 Md. 85 at 89, 156 A. 2d 436 at 439.

In *Sippio v. State, supra,* the indictment alleged a theft from Panzer Pickle Co., Inc., a corporation. At trial the truck driver who was robbed stated he was employed by

the Panzer Pickle Company. There was no other testimony as to the corporate existence except that he drove a truck "for them," the use of which language the Court of Appeals felt negated a corporate existence. There was no proof that either the money taken or the truck from which it was taken belonged to the Panzer Pickle Company. The Court of Appeals in reversing Sippio's conviction stated, "In the case before us the single reference to the company name (which did not include the "Inc." used in the indictment) was not, we think, sufficient." 227 Md. 449 at 452, 177 A. 2d 261 at 262.

In *Byrd v. State*, 229 Md. 148, 182 A. 2d 47, the indictment alleged a larceny from City Chevrolet Co., Inc., a corporation. The first witness for the State responded affirmatively when asked whether he worked for City Chevrolet Corporation. All other witnesses referred to it simply as City Chevrolet. The Court of Appeals in affirming Bryd's conviction stated: "We think the evidence produced by the State in this case sufficient in this regard, and the *Richardson* case almost parallel on its facts. The appellant relies heavily upon *Sippie* [*sic*] *v. State*, 227 Md. 449, a reversal, where not only was there a complete absence of any proof of corporate existence but also a failure on the part of the State to prove the ownership of stolen money." 229 Md. 148 at 150, 182 A. 2d 47 at 48. The Court of Appeals thus limited the *Sippio* rationale to emphasize the State's failure in *Sippio* to prove ownership of the property rather than the State's failure to prove corporate existence.

In *Szewczyk v. State*, 7 Md. App. 597, 256 A. 2d 713, the indictment alleged larceny from Food Fair, Incorporated, trading as Pantry Pride Supermarket. The store manager testified that he was employed by Food Fair, Incorporated, operating as Pantry Pride, and that he knew Food Fair to be a corporation. This Court held the testimony was sufficient to establish corporate existence.

In the instant case Mrs. Anita Thompson testified that she worked for W. T. Grant's, Frankford Plaza. Mr. John

Mueffelman testified that he worked for the W. T. Grant Company. When asked what his position had been, he replied "I was store manager of our store number 1082, Moravia Road, Frankford Shopping Center."

"Q. You say your store. Is that Grant's?
A. W. T. Grant Company."

Later in his testimony Mr. Mueffelman was asked the make of the stolen phonograph and the following was elicited:

"A. It was our Electra.
Q. You say, 'Our Electra'?
A. We carry the item in the Grant Company and it had the nameplate of Electra on it, I believe."

Mr. Richard Wolfe testified he was employed at W. T. Grant, 6437 Moravia Road and that he was a division merchandiser with W. T. Grant Company. Later in his testimony, when asked about the make of the stolen radio, he replied "[I]t has the Bradford label, which is a label specifically used by W. T. Grant and Company." Later in his testimony the following took place:

"A. Well the radio has our trade name on it which only can be used by W. T. Grant and this is Bradford . . .
Q. THE COURT: You mean the downtown Grant store?
A. Yes, the downtown Grant store. No other store can carry it except the W. T. Grant Company."

Mr. Warren Moore testified he was employed by the W. T. Grant Company. Thus, Mr. Mueffelman on three occasions referred to the organization as W. T. Grant Company as did Mr. Moore on one occasion. At no time did Mrs. Thompson, Mr. Mueffelman or Mr. Moore refer to the organization in anyway not consistent with its ex-

istence as a corporation. The only such reference was made by Mr. Wolfe when he referred to W. T. Grant and Company, but on two other occasions Mr. Wolfe used the title W. T. Grant Company. As in *Richardson, supra,* the language used with one exception was that of W. T. Grant Company, language consistent with a corporate title under Article 23, Sec. 5 (a) (1). We therefore hold that the testimony adduced at trial was sufficient to prove the corporate nature of W. T. Grant Company and the *probato* was not at variance with the *allegato.*

## II

The appellant next contends that the admission into evidence of photographs of the stolen goods rather than the stolen goods themselves violated the best evidence rule and thus was error. We have held otherwise in *Lamot v. State,* 2 Md. App. 378, 234 A. 2d 615, in which we stated that "the best evidence rule has never been applied to the introduction of chattels or material objects, but has been restricted to writings or other documentary evidence." 2 Md. App. 378 at 382-3, 234 A. 2d 615 at 618. *Lamot* concerned photographs of stolen goods and is directly on point, and thus appellant's contention is devoid of merit. Moreover, the goods alleged to have been stolen were fully described in the testimony.

## III

Appellant next contends that his arrest and subsequent search by Officer Dunn were based on insufficient probable cause. It is abundantly clear from the record that Officer Dunn talked to the store employees and that they furnished him with a complete description of the appellant and his companion, the direction in which they had fled, and told him that a crime had been committed. Officer Dunn then inspected the area in which the shoplifters had fled and noticed footprints across a swampy area heading south. Upon arrival at the southerly edge of the woods he noticed appellant and, according to his testimony, "there was the subject fitting the description

l had been given approximately 20 minutes prior." Officer Dunn took specific note of the shoes worn by the suspect and saw they were covered with mud, a fact consistent with a flight through the swampy woods. Officer Dunn placed appellant under arrest. We find that Officer Dunn, from his conversation with the store employees and his visual observation of the appellant, did in fact have probable cause to arrest the appellant without a warrant. See *Robinson v. State*, 4 Md. App. 515, 243 A. 2d 879; Cf. *Cleveland v. State*, 8 Md. App. 204. In any event, there was no objection to the introduction of evidence seized as a result of the arrest.

## IV

Appellant's next contention is that the evidence was insufficient to sustain appellant's conviction of assault with intent to murder. Specifically, he alleges there was no proof of an intent to murder. He claims that his action of firing the gun was proper in that he was merely resisting an unlawful arrest being made by the store employees. Assuming that in fact the actions of the employees constituted an unlawful arrest, we still find appellant's contention to be without merit. In *Halcomb v. State*, 6 Md. App. 32, 250 A. 2d 119, Chief Judge Murphy, speaking for this Court, stated:

> "The common law rule adhered to in Maryland is that a person illegally arrested by a police officer may use any reasonable means to effect his escape to the extent of using such force as is reasonably necessary under the circumstances. *Jenkins v. State*, 232 Md. 529; *Williams v. State*, 204 Md. 55; *Sugarman v. State*, 173 Md. 52; *Jones v. State*, 4 Md. App. 616. Where excessive force is used to resist an unlawful arrest, the party resisting may, himself, be charged with an unlawful assault, *Sharpe v. State*, 231 Md. 401; *Kellum v. State*, 223 Md. 80, and, as stated in *Davis v. State*, 204 Md. 44, 53,

if "more than reasonable force is used and death results under circumstances which otherwise would be murder, the grade of homicide is, say some courts, and may be, say other courts, reduced to manslaughter, because the killing was in resistance to an illegal arrest." To like effect, see 40 Am. Jur. 2d, *Homicide,* Sections 103-104; Clark and Marshall, *Crimes,* Sections 7.03, 10.08, 10.11, 10.19; *Perkins on Criminal Law,* pages 51, 673; Wharton's *Criminal Law and Procedure* (Anderson Edition) Sections 216, 1628.

"The *Davis* case involved, as here, a charge of assault with intent to murder growing out of the shooting of a police officer by the defendant under circumstances tending to indicate that the officer was unlawfully attempting to arrest the defendant. The Court of Appeals there rejected the rule applicable in some states that once the illegality of the arrest is established, the degree of homicide could not be greater than manslaughter, unless express malice is proved. Instead, the court adopted the rule that the accused must in fact have been filled with passion aroused by the illegal arrest sufficient to meet the usual provocation tests, if murder is to be reduced to manslaughter." 6 Md. App. 32 at 41-2, 250 A. 2d 119 at 124.

The rationale of the *Davis* case applies equally to illegal arrests by private individuals. Therefore, in order for appellant's conviction to be set aside, he must show that his action in firing the gun at the employees was the result of a passion directly resultant from the illegal arrest and this passion must arise from sufficient provocation. It is clear from the record that the trial judge did not believe appellant's resisting arrest argument and, in fact, throughout the trial, appellant himself claimed that his companion, and not he, fired the gun. The record

reveals no provocation on the part of the employees (who merely chased the two men) which would have permitted the use of deadly force to resist their attempts to prohibit appellant's flight. Therefore, we find that the use of the gun was not a product of sufficient provocation nor was it a product of aroused passion, but, instead, was a product of appellant's disregard for the lives of the store's employees in his attempt to escape their pursuit.

In addition, appellant contends that the shot was in the nature of a warning shot since he first yelled "Stop" to them. There is no merit to this contention. We have held that specific intent to kill is not a necessary element for conviction of assault with intent to murder. *McFadden v. State*, 2 Md. App. 725, 237 A. 2d 93. The inference of malice which is an essential part of intent to murder may be drawn from the fact of the use of a deadly weapon directed at a vital part of the body. *Chisley v. State*, 202 Md. 87, 95 A. 2d 577. The testimony adduced at trial was sufficient for the trial judge to find that appellant did point and fire a gun directed at a vital part of the body of Warren Moore, a store employee, and that appellant had no justification therefor. The trial judge committed no error in finding appellant guilty of assault with intent to murder.

V

Appellant contends that he was denied due process of law when the State failed, immediately subsequent to his arrest, to submit him to a paraffin test in order to determine whether appellant had recently fired a firearm. Appellant does not cite, nor can we find, any authority for this proposition. The record does not reveal any evidence that the appellant ever asked the police for a paraffin test and due process of law does not require the police to render any particular tests to appellant. Moreover, appellant was positively identified at the trial as the man who fired the gun. In addition, this allegation was not raised at trial and is thus not within our scope of review. Maryland Rule 1085.

## VI

Appellant's final contention is that there was insufficient untainted identification of the appellant by the employees of the store. He bases this argument on the fact that just prior to the preliminary hearing there was some discussion between Mrs. Thompson, Mr. Mueffelman, Mr. Wolfe and Mr. Moore in which Mr. Moore said that he had identified the appellant from a group of photographs shown him. However, there is nothing in the record to indicate that this remark influenced in any manner appellant's identification at the hearing by any of the witnesses. Mrs. Thompson, Mr. Mueffelman, Mr. Wolfe and Mr. Moore each positively identified appellant at the preliminary hearing and at the trial. The evidence discloses that each witness had ample opportunity to observe appellant prior to his arrest and in fact Mr. Wolfe actually had his hands upon him during the pursuit. The positive identification of a single eyewitness to a crime, if believed, is sufficient to convict. *Crosby v. State*, 2 Md. App. 578, 236 A. 2d 33. We find the identification of the appellant at the preliminary hearing and at the trial to be without taint.

*Judgments affirmed.*