VERNON *v.* AUBINOE ET AL.

[No. 2, September Term, 1970.]

*Decided October 12, 1970.*

160

The cause was argued before HAMMOND, C. J., and BARNES, MCWILLIAMS, FINAN, SINGLEY, SMITH and DIGGES, JJ.

*Lawrence Z. Bulman* for appellant.

*John F. Ward,* with whom were *Charles A. Carlton* and *Shapiro & Weil* on the brief, for appellees.

SMITH, J., delivered the opinion of the Court.

We shall here affirm the action of a trial judge who granted motions to dismiss at the end of the plaintiff's

case in a suit arising from injuries sustained on a District of Columbia sidewalk.

Appellant Mamie Vernon claimed in her suit that she fell on October 19, 1967, while "walking on the public sidewalk and driveway entrance in front of 3411 Davenport Street, N. W." She originally sued five individuals whom she alleged to be the owners of the land abutting the sidewalk. She did not allege the existence of a partnership. Voluntary orders of dismissal were entered as to two of those defendants, leaving in the case the appellees, Alvin Aubinoe, Alvin Aubinoe, Jr., and George W. Huguely.

The trial judge said in relevant part in passing upon motions to dismiss at the end of plaintiff's case:

"[T]he Court, feeling that, although there has been mention of the Aubinoe Company, and mention of the fact that Alvin Aubinoe, Inc. made some repairs to the hole in which the plaintiff allegedly fell, that there is no evidence in the case from which the jury can find that any of the individual defendants had any indicia of ownership, or maintained any control over the property in question, there having been no evidence introduced as to their ownership of either the portion referred to as the sidewalk, or the public sidewalk, or the driveway.

"Therefore, the Court grants a directed verdict in favor of all defendants."

A motion for a new trial was rejected with the comment:

"Upon motion for a new trial the Court has reviewed the entire record in this cause together with the deposition of Dorothy A. Clearwater taken on Tuesday, May 6, 1969. The purpose of such review was to determine whether there was any testimony to establish ownership or control in any of the defendants hereto of the real property or premises upon which the defective con-

dition alleged to have been the proximate cause of the plaintiff's injury was located. Although there are numerous references to the Aubinoe Company, the Aubinoe people, Alvin W. Aubinoe Inc., Mr. Aubinoe and Mr. Aubinoe, Jr., and to their efforts to make repairs, there is, in the Court's opinion no evidence to establish that any of the defendants in this cause owned or controlled the alleged defective premises or that they had a responsibility to maintain same."

Mrs. Vernon gave notice pursuant to Code (1965 Repl. Vol.), Art. 35, §§ 47-53 of her intent to rely on foreign law, referring to certain District of Columbia cases. Accordingly, the case was tried under the law of that jurisdiction. See *White v. King*, 244 Md. 348, 352, 223 A. 2d 763 (1966). Maryland law, however, controls as to the inferences to be drawn from the evidence, the sufficiency of the evidence, the inferences from it to go to the jury and other procedural matters. *Joffre v. Canada Dry, Inc.*, 222 Md. 1, 6, 158 A. 2d 631 (1960); *Doughty v. Prettyman*, 219 Md. 83, 88, 148 A. 2d 438 (1959); and *Tobin v. Hoffman*, 202 Md. 382, 386, 96 A. 2d 597 (1953). Under the District of Columbia cases it was necessary to prove ownership or control of the premises.

This case is considered under the oft stated rule that the evidence and all logical and reasonable inferences deducible therefrom are to be considered in the light most favorable to the plaintiff. *Callahan v. Reynolds*, 254 Md. 625, 629, 255 A. 2d 70 (1969); *McClearn v. Southeast Concrete Co.*, 253 Md. 135, 137, 251 A. 2d 896 (1968), and cases cited in each.

No apparent attempt was made to establish the identity of the owner of the premises nor the identity of those in control of the premises. It is assumed that Mrs. Vernon, a tenant, was cognizant of the identity of the owner. It is obvious that Mrs. Vernon could have established the actual ownership as a part of the facts of her case by resort to Maryland Rule 421 concerning admission of relevant matters of fact.

In her testimony Mrs. Vernon described where the accident took place. She made no reference to the ownership or control of the area or of the adjoining apartment building. Her only other witness was a cousin who visited her on the day of the accident. This witness also described the happening of the accident, but made no reference to ownership or control of the relevant areas.

The deposition of Enouch Faison, a former janitor, was read into the record. He replied in the affirmative to the question:

> "Was there a time when you were employed by the Aubinoe Company and worked at 3511 Davenport Street, Northwest?"

On another occasion the question directed to him by counsel for Mrs. Vernon was:

> "Would you tell us what your duties were when you were working for the Aubinoe people?"

These were the sole references to the name "Aubinoe" in his testimony. He did indicate that Mrs. Clearwater was the resident manager at the time.

A part of the deposition of Dorothy A. Clearwater, the resident manager, was also read into the record by counsel for Mrs. Vernon. Although she described herself as the resident manager for the period in question, she was not asked by whom she was employed, nor does it appear from her answers whether her employer was an individual, a corporation, or a partnership. At one point the deposition reads as follows:

> "Q. And did you request Alvin Aubinoe to do the driveway? A. I did mention that they were warned, and a little black top wouldn't do any harm.
> "Q. You mentioned this to who? A. Mr. Osborne, the construction man."

There was further reference to Mr. Osborne and repairs. Then another portion of the deposition read:

164

"Q. Page 29 — All right. Then the interrogatory where Mr. Aubinoe said they sent someone to make a repair, do you know what they repaired? A. Only the shallow hole, I suppose."

Interrogatories were propounded by Mrs. Vernon to Alvin Aubinoe. No interrogatories were submitted to the other four defendants. In response to an interrogatory as to "whether any reports of a defective condition of the said walk * * * in front of 3511 Davenport Street, N.W. * * * were made to [him] by anyone in the three year period prior to October 19, 1967", Mr. Aubinoe replied that none were made from January 20, 1966, through October 19, 1967, with its being unknown whether any such were made prior to January 20, 1966. The fourth interrogatory asked Aubinoe to "state whether the defendants received any complaint concerning the condition of the sidewalk * * * in front of 3511 Davenport Street, N.W. * * * in the three year period prior to October 19, 1967", with additional information being requested if answered in the affirmative. Aubinoe replied in the negative as to the period January 20, 1966, through October 19, 1967, stating it was unknown whether there were any such complaints prior to January 20, 1966. The 11th interrogatory asked information as to when the driveway was installed, whether any defendant or agent received a permit for its installation and by whom said permit, if any, was issued and when. Mr. Aubinoe's response to this was that he did not know when the driveway was installed, that no defendant or agent received a permit for its installation and he did not know by whom any permit might have been issued. The 12th interrogatory asked "whether any repairs were made to the sidewalk and driveway entrance to 3511 Davenport Street, N.W. * * * after October 19, 1967" and, if "yes", who made the repairs, when they were made, the type of repairs that were done and whether a permit was obtained for the repair. The answer to that question was as follows.

"Yes, by the construction department of Alvin L. Aubinoe, Inc., and although the exact date

of repairs is not known, it was shortly subse-
quent to October 19, 1967. Sack-crete black top
was placed in the depression; because it was a
very small depression, no permit was taken out."

These four interrogatories and the answers to them
were read into the record by Mrs. Vernon's attorney. They
with the two depositions previously mentioned and the
testimony of Mrs. Vernon and her cousin constitute the
complete record relative to ownership or control of the
apartment building where the accident took place.

It is obvious that the evidence thus presented by Mrs.
Vernon is not susceptible on its face of an inference that
any of the defendants owned or controlled the premises.
As far as it can reasonably be said to go is that Mrs.
Clearwater was the "resident manager"; that she was em-
ployed "by the Aubinoe Company", sometimes known as
"the Aubinoe people"; that repairs were made by the con-
struction department of Alvin L. Aubinoe, Inc., after a
request to "Alvin Aubinoe", later identified as being to
"Mr. Osborne, the construction man"; and that Alvin L.
Aubinoe, individually, had some knowledge of the prem-
ises and probable connection with Alvin L. Aubinoe, Inc.
Therefore, unless something more can be brought into or
read into the evidence, the evidence presented falls far
short of establishing ownership or control of the premises
by any of the defendants.

Mrs. Vernon attempts to work her way free from her
problem by contending that there was a judicial admis-
sion. She points to her 15th interrogatory to Alvin Au-
binoe in which he was asked to "state the name and pres-
ent address of all [his] agents and/or employees who were
in charge of keeping the driveway to 3511 Davenport
Street, N.W. * * * clean and free of debris from October
19, 1964, to October 19, 1967". His initial answer listed
Mrs. Clearwater as resident manager. In a supplemental
answer Enouch Faison and two other individuals were
also listed. From that, our holding in *McLhinney v. Lans-
dell Corp. of Md.*, 254 Md. 7, 254 A. 2d 177 (1969), use
of the deposition of Mrs. Clearwater, and Maryland Rule

413 a 2, she reasons that she has established ownership for purposes of the case in Mr. Aubinoe, Sr. She works this out from the fact that Mrs. Clearwater's deposition was read to the jury under Maryland Rule 413 a 2 with no objection made on behalf of the defendants "denying her employment or her status as a manager", she having characterized Mrs. Clearwater in one instance "as an adverse witness and managing agent" and in another instance "as an adverse party and managing agent".

Interrogatory 15 was not read into evidence. This Court has commented a number of times relative to the similarity of the Maryland discovery rules and the federal discovery rules. *Snowhite v. State, Use of Tennant,* 243 Md. 291, 308-309, 221 A. 2d 342 (1966), and cases there cited. Interrogatories and answers to interrogatories are not pleadings within the definition of Maryland Rule 5 v. Under the Federal Rules of Civil Procedure answers to interrogatories are not considered evidence unless offered as such at the trial. 2A *Barron & Holtzoff, Federal Practice and Procedure,* § 778 (Wright ed. 1961), and *Heilig v. Studebaker Corporation,* 347 F. 2d 686 (10th Cir. 1965). Therefore, the 15th interrogatory and the answers to it are not here considered in determining whether the trial judge erred in granting the defendants' motion to dismiss at the end of the plaintiff's case.

*McLhinney* went no further than to hold that a party was bound by his attorney's admission in an opening statement. 7 C.J.S. *Attorney and Client,* § 100b (1937), was there quoted to the effect that an attorney in a particular case has the power to bind his client by statements and admissions in pleadings or in opening statements or by admissions or statements of fact deliberately made in good faith in open court during the progress of the case for the purpose of dispensing with testimony or facilitating the trial of the case, unless the admission or statement is one expressly required by the statute to be made or signed by the client personally.

Maryland Rule 413 a 2 provides:

> "The deposition of a party or of any one who

at the time of taking the deposition was an officer, director, or managing agent of a public or private corporation, partnership, or association which is a party may be used by an adverse party for any purpose."

From this Mrs. Vernon fashions her argument relative to the deposition of Mrs. Clearwater. What counsel specifically said to the trial judge relative to the deposition is:

"It is a deposition of the managing agent of the defendant, read as an adverse party into evidence in the plaintiff's case."

Mrs. Clearwater was not a party. It is not clear that she was a "managing agent" within the meaning of the rule. See Annot., 98 A.L.R.2d 622 (1964), entitled, "Who is a 'managing agent' of a corporate party (to civil litigation) whose discovery-deposition may be taken under Federal Rules of Civil Procedure or state counterparts". If we were to assume that she were such a managing agent, then under the rule her testimony would be admissible only if she were a managing agent of a public or private corporation, partnership or association. No such organization was a defendant. The fact that defense counsel in this case offered no objection to the admissibility of the deposition is not a basis for a holding that Mr. Aubinoe, Sr., or any other party to the case was the owner of the land in question.

As was held in *McLhinney,* there certainly may be situations in which litigants are bound by the action of their attorney and his acts in the trial of a case may be taken as amounting to waiver on behalf of his client of presentation of certain evidence. That parties may likewise be bound by their own statements is equally clear. As far back as *Elwood v. Lannon,* 27 Md. 200 (1867), our predecessors said:

"[I]t is a well-settled principle that parties are bound by their written admissions made in the

progress of a cause, and cannot repudiate them at their pleasure, as the courts in England, as well as in this country, have repeatedly decided that admissions made in a cause are proper and competent evidence on a second trial. *Doe v. Bird,* 7 Carr. & Payne, 7. *Jackson v. Hinman,* 10 John. 292. *Merchants Bank v. Marine Bank,* 3 Gill, 96. *Farmers Bank v. Sprigg,* 11 Md. 389." *Id.* at 209-10.

We see no action of counsel or the parties here to which such a rule would be applicable.

Mrs. Vernon quotes *Drury, Claimant v. Pashen,* 227 Md. 181, 175 A. 2d 771 (1961), where Judge Horney said for the Court:

"Inasmuch as men and women generally own the property they possess, proof of possession is presumptive proof of ownership. *Guyer v. Snyder,* 133 Md. 19, 104 Atl. 116 (1918). *(Meyer) Motor Car Co. v. First Nat. Bank,* 154 Md. 77, 140 Atl. 34 (1928)." *Id.* at 187.

From this the argument is made that the defendants had possession and control of the premises in question "through their managing agent, employee and resident manager, Mrs. Clearwater, and the employee, Enouch Faison". The further argument is then made that there is a legal presumption relative to ownership. *Drury* and the cases there cited concerned personal property. The problem in this case is that although there is evidence of Mrs. Clearwater's and Mr. Faison's employment at the premises by somebody, there was no evidence as to the identity of their employer. It is reminiscent of *Ferrucci v. Jack,* 255 Md. 523, 258 A. 2d 414 (1969), in which the wrong party was sued as an apartment house owner and limitations had run by the time an attempt was made to sue the proper party.

Mrs. Vernon also relies on *Wells v. State,* 8 Md. App. 510, 261 A. 2d 181 (1970). *Wells* in turn reviewed *Rich-*

*ardson v. State,* 221 Md. 85, 156 A. 2d 436 (1959), *Sippio v. State,* 227 Md. 449, 177 A. 2d 261 (1962), and a number of other cases. *Richardson* held that various references throughout the trial to the correct corporate name, including some by counsel for the accused, coupled with apparent acquiescence in the general assumption that the owner of the stolen property was a corporation was sufficient. In *Sippio,* however, Judge (now Chief Judge) Hammond said for the Court:

> "It was not shown whether the money stolen belonged to Panzer or to the driver under some arrangement whereby he was responsible for the merchandise in the truck, and the money collected on its delivery. He testified: 'I had my money hid—I took my money to the front where I could see where it was at—I was robbed,' all of which would support the inference that the money was his." *Id.* at 452.

The conviction was set aside because there was no direct evidence that the stolen money belonged to the pickle company to whom it was alleged to have belonged. We fail to see aid and comfort for Mrs. Vernon in those cases.

What Chief Judge Prescott said relative to legally sufficient evidence in *Fowler v. Smith,* 240 Md. 240, 213 A. 2d 549 (1965), an automobile accident case, is equally applicable here. He said for the Court:

> "The words 'legally sufficient' have significance. They mean that a party who has the burden of proving another party guilty of negligence, cannot sustain this burden by offering a mere scintilla of evidence, amounting to no more than surmise, possibility, or conjecture that such other party has been guilty of negligence, but such evidence must be of legal probative force and evidential value. *State v. Hopkins,* 173 Md. 321, and cases cited; *Hevell v. Balto. Transit Co.,* 173 Md. 327; *Haddock v. Stewart,* 232 Md. 139. Cf. *Com-*

170

*missioners, etc. v. Clark,* 94 U. S. 278 (not a negligence case). The rule, stated in slightly different terms, is that where the facts are undisputed, or the facts most favorable to the party carrying the burden of establishing another party's negligence are assumed to be true and all favorable inferences, fairly deducible therefrom, are drawn in favor of the burden-carrying party, and such undisputed facts (or the said favorable facts and inferences) lead to conclusions from which reasonable minds could not differ, then the question of negligence, *vel non,* becomes a question of law." (citing cases) *Id.* at 247.

Reviewing the case as a whole, conceding the truth of all facts that might tend to support the right of the plaintiff to recover as well as all inferences which might naturally and reasonably be deduced from those facts, the sum total of the matter is that the plaintiff failed to establish ownership or control of the land in question.

*Judgment affirmed; appellant to pay the costs.*